UNITED STATES of America, Plaintiff,

v.

GLASS MENAGERIE, INC., d/b/a "The Glass Menagerie", Dimitru Costea and Barbara Rea, Defendants.

No. S 89 Cr. 325(CLB).

United States District Court,
S.D. New York.

Sept. 6, 1989.

Benito Romano, U.S. Atty. by Kerry Lawrence, Asst. U.S. Atty., New York City, for plaintiff.

Gary Greenwald, Wurtsboro, N.Y., for defendants The Glass Menagerie, Inc. and Dimitru Costea.

Kalman H. Geist, Paterson, N.J., for defendant Barbara Rea.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

By a superseding indictment filed on June 23, 1989, defendants The Glass Menagerie, Inc. and Dimitru Costea and Barbara Rea, owners of the corporate defendant, are charged in a twenty-three count indictment with one count of Interstate Conveyance of Drug Paraphernalia, nineteen counts of Offering for Sale and Transportation in Interstate Commerce Drug Paraphernalia, and two counts of Exporting Drug Paraphernalia, in violation of 21 U.S.C. § 857(a)(1), (a)(2), and (a)(3), the Mail Order Drug Paraphernalia Act. The Government also seeks forfeiture under 21 U.S.C. § 853(2) of the Westbrookville property mentioned below and of a bank account, safety deposit box and other property held by the defendants. Specifically, defendants are charged with having knowingly and willfully offered for sale in interstate commerce various articles of drug paraphernalia, including, *inter alia,* glass pipes, water pipes, chamber pipes, carburetor pipes, electric pipes, air driven pipes, bongs, ice pipes, cocaine free-base kits, and equipment used for manufacturing crack pipes, primarily intended and designed for use in inhaling, ingesting, and otherwise introducing cocaine into the body. 21 U.S.C. § 857.

The items referred to in the indictment were seized pursuant to a warrant executed by United States Customs Service Agents on April 12, 1989 at the premises of The Glass Menagerie, Inc. in Westbrookville, New York, in this district. These premises, which housed the combined office, factory and warehouse space of the corporate defendant, contained machinery capable of and customarily used for manufacturing decorative glass objects, such as vases, bowls, glasses, candle holders, oil lamps, and perfume boxes, in addition to assorted glass pipes. According to defendant Costea, his profession is designing, creating and manufacturing miniature glass objects of art. Defendant Costea claims he never utilized his business in any way to manufacture and market "drug paraphernalia." A copy of The Glass Menagerie catalogue is before the Court as an exhibit, and familiarity of the reader therewith is assumed.

Defendants move to suppress evidence obtained during the search on numerous grounds: (1) there was no probable cause for the issuance of the warrant; (2) the affidavit submitted in support of the warrant contained false and misleading statements; (3) the warrant was defective because it was "overbroad," in that it failed to explain the criteria which distinguish illicit pipes, spoons, etc. from similar innocuous items; (4) the affidavit submitted in support of the warrant failed to set forth the basis for the agent's conclusions that the invoices related to contraband; and (5) the Government's seizure went far beyond the terms of the warrant. Alternatively, defendants seek an order granting them a *Franks* hearing to determine the admissibility of such evidence.

Defendants also move to dismiss the indictment on the grounds that the Mail Order Drug Paraphernalia Act is unconstitutional on its face and as applied in this case. This motion was fully submitted for decision on August 9, 1989 and is resolved as follows.

Title 21 U.S.C. § 857 provides in relevant part:

(a) Unlawfulness

It is unlawful for any person—

(1) to make use of the services of the Postal Service or other interstate conveyance as part of a scheme to sell drug paraphernalia;

(2) to offer for sale and transportation in interstate or foreign commerce drug paraphernalia; or

(3) to import or export drug paraphernalia.

   \*     \*     \*     \*     \*     \*

(d) Definition of "drug paraphernalia"

The term "drug paraphernalia" means any equipment, product, or material of any kind which is *primarily intended or designed* for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of the Controlled Substances Act (title II of Public Law 91–513). [21 U.S.C.A. § 801 *et seq.*] It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, or amphetamines into the human body, such as—

(1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, hashish heads, or punctured metal bowls;

(2) water pipes;

(3) carburetion tubes and devices;

(4) smoking and carburetion masks;

(5) roach clips; meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;

(6) miniature spoons with level capacities of one-tenth cubic centimeter or less;

(7) chamber pipes;

(8) carburetor pipes;

(9) electric pipes;

(10) air-driven pipes;

(11) chillums;

(12) bongs;

(13) ice pipes or chiller;

(14) wired cigarette papers; or

(15) cocaine freebase kits.

(Emphasis added.)

*Factual Background*

On April 10, 1989, Magistrate Joel J. Tyler signed a search warrant authorizing federal agents to search The Glass Menagerie for:

(1) glass pipes and hashish heads; (2) water pipes; (3) carburetion tubes and devices; (4) smoking and carburetion masks; (5) roach clips; (6) miniature spoons; (7) chamber pipes; (8) carburetor pipes; (9) electric pipes; (10) air driven pipes; (11) chillums; (12) bongs; (13) ice pipes or chillers; (14) cocaine freebase kits; (15) crack pipes; (16) crack vials; (17) drug "cutting" agents; (18) hemostats designed for use as roach clips; (19) equipment designed for use in manufacturing crack pipes, bongs, carburetor pipes and crack vials; and (20) books, records, ledgers and other documents, including computer disks.

In support of the warrant, the Government had submitted to Magistrate Tyler the affidavit of Customs Special Agent Anthony Giattino, which stated that while executing searches in March, 1989 for violations of 21 U.S.C. § 857 at two businesses, Music City Marketing Inc. of Nashville, Tennessee and Award Distributing Inc. of Philadelphia, Pennsylvania, sales invoices from The Glass Menagerie were seized. Various catalogue numbers of items apparently sold and shipped by The Glass Menagerie were mentioned on those invoices. Agent Giattino obtained a copy of a The Glass Menagerie catalogue, which included item numbers, photographs, an introductory letter to customers, numbers, and a price list, in order to cross reference the catalogue numbers on the signed invoices with descriptions of items offered for sale in the catalogue. An Assistant United States Attorney suggested that Agent Giattino include parenthetical references to what the items set forth in the invoices were perceived by him to be, i.e., (crack pipes), (crack pipe stems), etc.

According to Agent Giattino, these invoices established interstate trafficking in drug paraphernalia by The Glass Menagerie.

The affidavit also noted that, based on experience of four years as a Customs Special Agent and approximately two years as a drug paraphernalia expert, Agent Giattino knew that traffickers in drug paraphernalia used "code names" and "coded" ref-

erences in their business records and that this information would probably be contained in programs within the hard disk drive of computers used by The Glass Menagerie. In addition, Agent Giattino described an interview with a former employee who worked for The Glass Menagerie from June, 1977 to November, 1986, who had observed and aided in the manufacture of crack and cocaine-related paraphernalia at a time prior to the effective date of the statute. Finally, during surveillance of the building, another customs agent observed a Glass Menagerie truck leave The Glass Menagerie on March 1, 1989. For these reasons, Agent Giattino concluded that The Glass Menagerie was then engaged in conduct which violated Federal law.

When the warrant was executed on April 12, 1989, agents seized five tractor-trailer loads of machinery and equipment, including seventy-one boxes of flasks, hundreds of plastic funnels, sewing thimbles, and solid glass figurines, in addition to the items listed in the warrant. Basically, The Glass Menagerie was stripped bare. All of the corporate books and records were also seized. According to the estimate of Agent Giattino, denied by movants, over ninety percent of the items seized, aside from equipment and records, were drug paraphernalia in one form or another.

*Discussion*

Defendants recognize that evidence obtained by officers "acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate" will not be suppressed, even if a reviewing court subsequently determines that the warrant was unsupported by probable cause. *United States v. Leon,* 468 U.S. 897, 900, 104 S.Ct. 3405, 3409, 82 L.Ed.2d 677 (1984). Defendant, however, contends that there was no reasonable reliance on the warrant because: (1) an examination of the affidavit in support of the warrant "clearly demonstrates that the affidavit *prima facie* lacks probable cause for several reasons," *United States v. Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, *quoting Brown v. Illinois,* 422 U.S. 590, 610–611, 95 S.Ct. 2254, 2265–2266, 45 L.Ed.2d 416 (1975); and (2) the affidavit contained information the falsity of which was either known to the affiant, or would have been known, but for his reckless disregard for the truth. *Id.* The Court finds that these arguments are without merit because not supported by facts.

*Probable Cause*

The Court is persuaded that Agent Giattino's affidavit demonstrated probable cause sufficient to support Magistrate Tyler's issuance of the warrant. At the outset, it should be noted that probable cause cannot be "reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). As the Supreme Court observed, a "commonsense, practical" review of the "totality of the circumstances" is necessary to decide whether in a particular factual context the probability of criminal conduct has been established. *Id.* at 230, 103 S.Ct. at 2328; *see Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969) ("only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause"); *see also United States v. Thomas,* 757 F.2d 1359 (2d Cir.1985).

This approach is particularly well-suited to cases involving alleged drug paraphernalia, "where the individual components ultimately put together to facilitate drug trafficking and use may, when viewed in isolation, look perfectly innocent." *United States v. Main Street Distributing, Inc.* 700 F.Supp. 655, 659 (E.D.N.Y.1988). In most cases, it is only after a careful consideration of the facts presented in the application as a whole, "in a common sense fashion rather than technically," *United States v. Kahan,* 572 F.2d 923 (2d Cir.), *cert. denied,* 439 U.S. 833, 99 S.Ct. 112, 58 L.Ed.2d 128 (1978), *quoting United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), with deference to the expertise of experienced law enforcement officials, that the probability of criminal activity can be found. *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1982); *United States v. Young,* 745 F.2d 733 (2d Cir.1984). The Court should not merely focus on isolated

**58**

portions of the application. *See United States v. Abrams*, 539 F.Supp. 378, 386 (S.D.N.Y.1982).

Moreover, in any case involving a search pursuant to a warrant, once a neutral magistrate has decided that probable cause exists, that determination is entitled to "great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. at 236, 103 S.Ct. at 2331, *quoting Spinelli v. United States*, 393 U.S. at 419, 89 S.Ct. at 590. Indeed, "in a close case, any doubts should be resolved in favor of upholding the warrant." *United States v. Jackstadt*, 617 F.2d 12, 14 (2d Cir.), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980).

■ In support of their contention that no probable cause existed to justify issuing the search warrant, defendants focus on two portions of the affidavit. First, defendants allege that Agent Giattino never adequately set forth his credentials as an expert in drug paraphernalia, and that, as a result, the Magistrate's reliance on this representation was misplaced. While it is true that the only assertion *specifically* made by Agent Giattino in regard to drug paraphernalia investigations was that "[s]ince January 23, 1987, ... I have devoted substantial time to drug paraphernalia investigations," Agent Giattino had been a Customs Agent for four years and had participated in numerous investigations involving import violations. In addition, he was familiar with the searches of both the Music City and the Award Distributors businesses. This experience supports an inference that he had developed expertise sufficient to identify the various equipment, products and materials that are used to ingest controlled substances into the body. The fact that he did not list all the schools he attended, or provide a complete reference to every investigation in which he had participated, is not dispositive. The Court concludes that Agent Giattino was an experienced Customs Agent who was as qualified as anybody to identify drug paraphernalia, and that the Magistrate reasonably relied on the assertions made in the affidavit concerning Agent Giattino's expertise when he issued the warrant. *See*

*Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978) ("there is, of course, a presumption of validity with respect to the affidavit supporting the search warrant").

■ The next argument made by defendants is that the information supplied by the former employee of The Glass Menagerie can only be characterized as "stale" and therefore fails to satisfy the requirement set forth in *United States v. Thomas, supra*, that there be proof of "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Id.* at 1367–68, *citing United States v. Beltempo*, 675 F.2d 472, 477 (2d Cir.), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982). The language of that Second Circuit case, however, does no more than reflect the concern of a long line of Supreme Court cases that probable cause to issue a warrant exists if the affidavit submitted establishes that the evidence sought is probably on the premises to be searched at the time of the application. *See Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932). Although a search must be based on current probable cause, a search may be predicated on facts existing in the past if there is reason to believe that those facts are still in existence. *United States v. Beltempo*, 675 F.2d at 477. Of course, no "arbitrary 'cut-off'" dates or "rigid formula[s]" control a determination of currency. *Id.* at 478. Considerable flexibility in assessing currency is appropriate, especially where an offense is deemed continuing. *Id.* at 477.

In the instant case, although the information supplied by the employee was almost two and a half years old when the application for the warrant was made, the totality of the known facts justifies the inference that the items were still being made by The Glass Menagerie and stored on its premises at Westbrookville.

The Glass Menagerie was established in Westbrookville in 1984, and the informant employee worked there until November, 1986. The machinery and equipment he observed in 1984 remained on the premises.

Unlike a search warrant for a narcotics stash where experience has shown that supplies are disposed of over a short interval of time, the search of an ongoing manufacturing enterprise is much more likely to involve supplies that remain available for distribution over a lengthy period of time. Similarly, written records pertaining to inventory and past activity are much more apt to exist where a business involves manufacturing. Like the business in *Main Street Distributing,* the place to be searched in the instant case "was, from all outward appearances, an established business enterprise, not some temporary and easily abandoned location." The Magistrate could thus reasonably conclude that The Glass Menagerie, "like most businesses, had an inventory of regularly stocked items that it offered for sale." 700 F.Supp. at 662.

■ Finally, defendants claim that Agent Giattino did not offer any basis upon which the Magistrate could assess the reliability of the Government's confidential informant. Defendants further argue that even if the informant was reliable, the statement he provided constitutes hearsay. Neither of these contentions has merit. The invoices and other materials seized at the other locations, which referred to The Glass Menagerie, confirmed what the informant told Agent Giattino, thereby providing a good faith basis to determine reliability. Furthermore, Fed.R.Crim.P. 41(c) provides that an affidavit in support of a search warrant can be based in whole or in part on hearsay evidence.

■ Defendants further contend that paragraphs 4b and 4c of the affidavit contain false and misleading information because these paragraphs "state that items referred to by invoices of The Glass Menagerie and catalogues published by The Glass Menagerie are described as drug paraphernalia." Defendants are referring to the descriptions supplied by an Assistant United States Attorney that were listed in the affidavit in parentheses next to a catalogue number in order to help the Magistrate identify that particular item, e.g., "(crack pipe), (crack pipe stem)," etc. Since defendants themselves did not designate any of their glass goods as crack pipes or crack pipe stems when the invoices and catalogue were created, defendants contend that the Government agents were trying to mislead the Magistrate into believing that the defendants had so identified the items. This misrepresentation would lead the Magistrate to believe that innocuous objects of art were really illegal "drug paraphernalia."

The Court believes that the Government agents merely were trying to assist the Magistrate in identifying the various items, and that an experienced Magistrate, who has signed warrants in numerous drug seizures, would know that the descriptive terms included in parentheses after the invoice numbers were put there by the Government agents so that items could be quickly and accurately identified and correlated with the catalogue and other records. It seems obvious to this Court and must have been apparent to the Magistrate that defendants would not label the glass "art works" contained in the invoices and catalogue in such a way as to invite criminal charges against themselves.

Arguably, the affiant should have made a more complete record by submitting copies of the original invoices, which did not contain any parenthetical matter, along with the rest of his affidavit. Ultimately, the agent is responsible for what appeared in the affidavit since he is the sworn affiant. However, the Court is satisfied that, as Agent Giattino asserts, the parenthetical references were offered for illustrative and explanatory purposes and were not intended to suggest, nor did they suggest to the Magistrate, that the words "crack pipe" actually appeared on the invoices. *See Franks v. Delaware,* 438 U.S. at 171, 98 S.Ct. at 2684 ("allegations of negligence or innocent mistake are insufficient"). Since the invoice numbers match the pictures in the catalogue to a considerable extent, there was sufficient probable cause to find that the items were drug paraphernalia without the parenthetical references identifying the items. The Court therefore concludes that no knowingly or recklessly

false or misleading statements were made to the Magistrate to support the issuance of the warrant. *See Franks v. Delaware,* 438 U.S. at 171–172, 98 S.Ct. at 2684–2685. Nothing in the record suggests that the Magistrate acted simply as a "rubber stamp" for the prosecution or that the presence of the parenthetical references diverted or confused him in any way. *United States v. Leon,* 468 U.S. at 923, 104 S.Ct. at 3421.

■ Defendants next assert that the warrant was defective as overbroad in that it failed to explain the criteria that distinguish illicit from innocuous items. Defendants contend that the warrant lacked the necessary particularity to enable the officers who executed the warrant to distinguish between "drug paraphernalia" and ordinary glassware. This argument may have some validity when recast as an attack on the vagueness of the statute. If we assume the statute is valid, however, then a warrant that tracks the statute almost verbatim cannot be vacated as a general warrant.

In support of their argument that the warrant did not differentiate contraband from legitimate objects, defendants cite *United States v. Klein,* 565 F.2d 183 (1st Cir.1977).[1] In *Klein,* the warrant authorized the police to seize 8–track tapes from a retail store which was selling both legitimate tapes and unauthorized "pirate" reproductions. In executing the warrant, the agents seized most of the defendants' tape inventory because the warrant failed to set forth criteria for distinguishing pirate tapes from legitimate tapes. As a result, the officers lacked any guidance with respect to which items should be seized. The Court determined that the search was improper and that the affidavit should have distinguished between the pirated tapes and the lawful ones. By contrast, the warrant to search The Glass Menagerie directs the agents to seize specific, described items such as crack pipes and carburetor pipes. Unlike the search in *Klein,* the instant

search did not require the agents to discern those characteristics, imperceptible to the naked eye, that would distinguish a pirated from a lawful tape.

■ Finally, the defendants claim that the seizure went so far beyond the terms of the warrant that all the evidence seized should be suppressed. Defendant does not cite a Supreme Court case or a Second Circuit opinion that invoked this remedy, and *United States v. Dunloy,* 584 F.2d 6, 11 n. 4 (2d Cir.1978) is authority to the contrary. Movants rely on *United States v. Medlin,* 842 F.2d 1194 (10th Cir.1988), *United States v. Rettig,* 589 F.2d 418 (9th Cir.1979), and *dictum* in *United States v. Matias,* 836 F.2d 744, 747 (2d Cir.1988) suggesting suppression might be available in a situation involving "flagrant" disregard of the warrant's terms, not present here. *Medlin* and *Rettig* each involved pretextual abuse of the warrant procedure. In *Medlin,* a state deputy sheriff, unable to obtain a search warrant for stolen goods, informed federal agents that there were illegal firearms on the same premises. A warrant was obtained to seize the illegal firearms as a pretext to seizing over 600 stolen items for the state deputy sheriff, none of which were enumerated in the federal warrant. *Rettig* also involved a pretextual abuse of an arrest warrant after agents were denied a warrant by a Magistrate to search premises for cocaine, because their application was based on stale information.

The Glass Menagerie search, however, did not involve a pretext search. The agents were looking for drug paraphernalia and records that were carefully enumerated in the warrant. While the defendants contend that the items are simply glassware, and the Government argues that everything seized was drug paraphernalia, existence of this type of factual dispute does not void the warrant or the seizure. Also, the fact that the Government returned the machinery used to manufacture the glassware at The Glass Menagerie and

---

**1.** The only Second Circuit case cited by defendants on this point, *United States v. Marti,* 421 F.2d 1263 (2d Cir.1970), involved the New York obscenity law. Obscenity cases, with their First Amendment implications, are sui generis and therefore have no relevance to the case at bar.

related items is not an admission that the search far exceeded the scope of the warrant.

Suppression of validly seized evidence is not an appropriate remedy in a case in which agents executing the warrant grabbed too much unrelated property. For the seizure and distraint of its property not within the scope of the warrant, the defendant corporation has an adequate remedy at law for money damages against the United States. *See* 28 U.S.C. § 1346.

*The Constitutionality of 21 U.S.C. § 857*

■ Defendants challenge the constitutionality of 21 U.S.C. § 857 on two grounds: (1) the statute is facially unconstitutional in that the definition of "drug paraphernalia" is impermissibly vague; and (2) the statute is unconstitutional in that the definition of "drug paraphernalia" is impermissibly vague as applied to them. Specifically, defendants challenge the statute because: (1) the definition set forth in the statute fails because it does not provide fair notice as to what conduct is proscribed as illegal and permits arbitrary and discriminatory enforcement; and (2) the scienter requirement is unclear and raises the prospect that defendants could be convicted of a crime without any showing of intent.

This Court is reluctant to declare that this statute, directed as it clearly is against the "head shops," is void on its face and in all events as to everybody. At least as to the issue of whether the statute is unconstitutional as applied in other than a "head shop" situation, and the subsidiary issue of whether Congress has now authorized the manufacturer of dual purpose glassware to be convicted of a federal felony not upon any showing of criminal intent on the part of the actor but only on some inference to be drawn as to the "primary" intent of some group of unidentified future customers who will or may use the glassware in a nefarious fashion, movants seem to be on firmer ground.

A prerequisite to an "as applied" analysis, however, is the existence of a complete factual record before the Court that will tell us exactly how the statute is sought to be applied in the case under consideration. This we do not now have. It is not without good reason that no analogue to civil summary judgment exists in a criminal case.

As a matter of discretion, this Court denies the motion to dismiss the indictment on these constitutional grounds at this time, with leave to renew on an adequate trial record which will inform exactly how the statute is sought to be applied in this case. Resolution of this branch of the motion will depend on the totality of the proof at trial and indeed may also be affected by the nature and extent of the jury instructions, especially on knowledge and intent, that are to be given.

The Government shall serve and file its proposed jury instructions for the trial of this case on or prior to September 18, 1989. Defendants if so advised may serve and file counter-proposed jury instructions on or prior to September 25, 1989. All trial participants may modify or add to their requested jury instructions for good cause at any time during trial prior to summations.

Scheduling issues and all other pre-trial matters will be considered and a date for jury selection will be determined at a pre-trial conference to be held before the Court on October 4, 1989 at 9:00 A.M. in Courtroom 31 of the White Plains Courthouse which defendants shall attend.

Motions denied.

SO ORDERED.