**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 28 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROMAN HERN MORAGA,

    Defendant - Appellant.

No. 02-2322
(D.C. No. CR-01-964-JP)
(D. New Mexico)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

---

Having entered a conditional guilty plea to federal drug and firearm charges, Roman Hern Moraga appeals the district court's denial of his motion to suppress certain evidence obtained from two vehicles, a Camaro and a Taurus. We conclude that Moraga lacks standing to challenge the search and seizure of the Taurus, the Camaro was properly impounded, and the search of the Camaro

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

was a valid inventory search. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I

Early in the morning of May 21, 2001, Deputy Jeff Noah of the Valencia County Sheriff's Department ("Department") responded to a report of shots being fired from a red vehicle in the El Cerro Mission area. He stopped a red Chevrolet Camaro matching the description. Moraga was driving the Camaro, and Peggy Sisneros was in the passenger seat. Observing that Moraga and Sisneros both appeared to be intoxicated, Deputy Noah performed field sobriety tests on Moraga, which Moraga failed. Deputy Noah arrested Moraga and placed him in his patrol car. At the time of his arrest, Moraga had the title to the Camaro in his pocket and the bill of sale was in the glove compartment. The bill of sale indicated that the Camaro had been sold for $500, but did not give the buyer's name; the title likewise indicated that the car had been sold, but did not provide the name of the buyer.

Meanwhile, Deputy Joe Portillo and Reserve Officer Paul Sandoval arrived at the scene. Sisneros being in no condition to drive, Deputy Portillo asked her if she knew of someone who could drive the vehicle away. Sisneros responded that her mother could come from Albuquerque, but estimated that it would take her mother over an hour to retrieve the Camaro. Deputy Portillo was not willing to

wait this long, because the neighborhood was a high-crime area, there was insufficient manpower to guard the vehicle, and standard Department policy was to have the vehicle towed. Accordingly, Deputy Portillo called a tow truck, which was expected to arrive in approximately ten to thirty minutes.

While waiting for the tow truck to arrive, Deputy Portillo and Reserve Officer Sandoval conducted a warrantless search of the Camaro and found, among other things, a bottle of rum and a loaded Smith and Wesson handgun. These items were tagged into evidence. The officers left everything else that they found inside the Camaro and listed it on the tow-in form. Deputy Noah checked a box on the tow-in form indicating that the vehicle was to be held "for investigation." (Gov. Ex. 28.) The vehicle was then towed away.

A few days later, Deputy Noah learned from an agent of the Bureau of Alcohol, Tobacco, and Firearms that, according to a confidential informant, there were drugs under the hood of the Camaro. Deputy Noah knew that he was unlikely to obtain a warrant to search the impounded Camaro, and an attorney at the District Attorney's office informed him that there was insufficient probable cause to search under the hood. Deputy Noah nevertheless searched under the hood and found drugs, which were marked for destruction rather than tagged into evidence. Deputy Noah later testified that he conducted this warrantless search

under the hood in order to prevent the drugs from being distributed on the street and never intended to introduce the drugs as evidence against Moraga.

At some point following his initial arrest and incarceration, Moraga was apparently released from custody. On June 20, 2001, Sergeant Ramon Casaus of the New Mexico State Police conducted surveillance at Sisneros' house, where Moraga was thought to be hiding.[1] In the afternoon, Moraga emerged from the house, entered a maroon 1993 Ford Taurus, and drove away. Casaus pursued the vehicle, as did another police unit. A chase ensued, during which Moraga turned the wrong way down a one-way street; while Moraga drove against traffic, a truck collided with the Taurus and spun it around. Moraga exited the vehicle and ran away on foot, but Casaus pursued him and eventually caught up with him. Injured in the crash, Moraga was arrested and placed in an ambulance. Moraga had the title and registration of the Taurus with him at the time of his arrest. Although the Taurus was registered to Barry Smith, Smith had signed the title as a seller, but had not indicated the name of the buyer.

After Moraga was arrested, a crime-scene investigator photographed the Taurus, sealing the vehicle so that a warrant could be obtained to search it. As a result of the collision with the truck, the Taurus was not operable, and was towed

---

[1] Moraga was by then a fugitive with two outstanding warrants for his arrest.

to the impoundment lot. Law enforcement agents instructed the towing company not to release the vehicle unless and until it was searched and released by law enforcement. Moraga's friend Nora Baca asked Smith, the registered owner of the Taurus, to retrieve the vehicle, but the towing company told Smith that there was no car registered under his name.

Meanwhile, the FBI, having unsuccessfully attempted to obtain a search warrant, made arrangements to borrow a drug-sniffing dog and its handler from the United States Air Force base. The dog alerted to the presence of drugs in the Taurus. Based on the dog's alert, the FBI submitted a second affidavit for a search warrant, which a magistrate judge issued. In executing the warrant, the officers found 275 grams of marijuana and about 239 grams of methamphetamine in the Taurus, along with a revolver and ammunition.

Moraga was indicted on several federal drug and firearm charges. He moved to suppress the evidence obtained from the Camaro and the Taurus, and the district court held a suppression hearing. In order to establish standing to challenge the search of the Camaro, Moraga testified that he was in the process of buying the Camaro from Todd Vaporous when he was stopped on May 21, that he had agreed to pay $2500 for the Camaro, and that he had already given Vaporous $2000 in return for a bill of sale and the title. With regard to the Taurus, Moraga testified that he had bought that vehicle from Smith, whose name appeared on the

title. Moraga estimated that the purchase price was around $1200 to $1500. Smith was called to the stand, and testified that he had sold the Taurus to a male neighbor of Baca but did not know the man's name, although he could describe him. When asked if he saw the buyer in the courtroom or if he knew Moraga, Smith answered in the negative.

The district court ruled that Moraga had standing to challenge the search of the Camaro, but concluded that the search of that vehicle was a valid inventory search and rejected Moraga's argument that the blanket-suppression doctrine should apply. As for the Taurus, the district court held that Moraga lacked standing to challenge the search of that vehicle, and that, even if Moraga had standing, his Fourth Amendment challenge would fail on the merits.

Following the district court's denial of his suppression motion, Moraga pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and one count of possession of more than 50 grams of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Moraga reserved the right to appeal the denial of his suppression motion. On each count, the court sentenced Moraga to concurrent terms of 300 months' imprisonment. Moraga now appeals the district court's denial of his suppression motion.

## II

"When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government." United States v. Long, 176 F.3d 1304, 1307 (10th Cir. 1999). Where the facts are controverted, as here, we accept the district court's factual findings unless they are clearly erroneous, but the ultimate question of reasonableness under the Fourth Amendment is reviewed de novo. Id.; United States v. Rubio-Rivera, 917 F.2d 1271, 1275 (10th Cir. 1990).

As a threshold matter, we consider whether Moraga has standing to challenge the search and seizure of the Camaro and the Taurus. Fourth Amendment rights "are personal and cannot be asserted vicariously." United States v. Arango, 912 F.2d 441, 445 (10th Cir. 1990) (citing Rakas v. Illinois, 439 U.S. 128, 140 (1978)). In determining whether a defendant has standing to challenge the search of a vehicle, we consider whether he manifested a subjective expectation of privacy in the vehicle and whether society would recognize that expectation as objectively reasonable. Id. (citing Smith v. Maryland, 442 U.S. 735, 740 (1979)). Ownership and lawful possession are not determinative, but are often dispositive factors. Id. Legal documentation of lawful possession is not required, but the defendant "must at least state that he gained possession from the owner or someone with the authority to grant possession." Id.

With regard to the Camaro, Moraga testified at the suppression hearing that he was in the process of buying that vehicle from its owner and that he had already paid a substantial portion of the purchase price. Finding Moraga's testimony on this point credible and sufficient, the court held that Moraga was in lawful possession of the Camaro. We conclude that this factual finding of the district court is not clearly erroneous, and thus Moraga has standing to challenge the search and seizure of the Camaro.

In the case of the Taurus, Moraga also testified that he obtained possession of that car from the registered owner. However, Smith, the registered owner, was called to the stand, and his testimony contradicted that of Moraga. Specifically, Smith told the court that he sold the Taurus to a male neighbor of his friend Nora Baca. Smith was able to provide a description of the man, but when asked if he saw the man in the courtroom, Smith responded that he did not. Smith further testified that he did not know Moraga, and stated that he sold the Taurus for $1000, whereas Moraga had testified that he paid between $1200 and $1500 for the car. Based on the contradictions between Moraga's testimony and that of Smith, the district court ruled that Moraga had failed to "carr[y] his burden of demonstrating by credible and sufficient evidence that he had an expectation of privacy in the Taurus which society would recognize as objectively reasonable."

United States v. Moraga, No. CR-01-964 JP, slip op. at 11 (D.N.M. June 25, 2002).

When a trial court makes a determination that a defendant's testimony is not credible, we are bound by that factual finding unless it is clearly erroneous. United States v. Erickson, 732 F.2d 788, 790 (10th Cir. 1984). In the instant case, the district court concluded that Moraga's claim of lawful possession was not worthy of credence. While Moraga had the title and registration in his possession at the time of his arrest, his name did not appear on either document. Taking into account Smith's testimony that he did not recognize Moraga as the buyer, the district court reasonably concluded that Moraga had failed to show that he obtained the Taurus from "the owner or someone with authority to grant possession," Arango, 912 F.2d at 445. Because the defendant fails to persuade us that the factual findings of the trial court are clearly erroneous, we defer to the district court's conclusion that Moraga lacks standing to challenge the search and seizure of the Taurus.[2]

### III

We now address the search and seizure of the Camaro. Because the search of the Camaro took place after the vehicle was impounded for towing, we first

---

[2] Because Moraga lacks standing, we do not consider the merits of his challenge to the search and seizure of the Taurus.

consider whether the impoundment was proper, and then address the propriety of the search.

**A**

In order to pass Fourth Amendment scrutiny, "[a]n impoundment must either be supported by probable cause, or be consistent with the police role as 'caretaker' of the streets and completely unrelated to an ongoing criminal investigation." United States v. Duguay, 93 F.3d 346, 352 (7th Cir. 1996) (citing South Dakota v. Opperman, 428 U.S. 364, 370 n.5 (1976)). We have held that an impoundment is reasonable when the driver of the car cannot lawfully operate the vehicle and there is no third person who can immediately take custody of the car. United States v. Haro-Salcedo, 107 F.3d 769, 771 (10th Cir. 1997); see also United States v. Johnson, 734 F.2d 503, 505 (10th Cir. 1984) (holding that an impoundment is justified when police are concerned about vandalism and the owner is clearly unable to drive). In the instant case, the evidence showed that neither Moraga nor Sisneros was able to drive the Camaro, and Sisneros told the police that it would take an hour for her mother to come and pick up the car. Under these circumstances, the district court found that the impoundment was justified by the deputies' caretaking responsibilities.

Moraga contends on appeal that, because the tow-in form indicated that the vehicle was held "for investigation," the impoundment was not solely related to

the officers' caretaking function. As the district court notes, however, the evidence suggests that the decision to hold the Camaro "for investigation" was made only after the vehicle was searched and the officers found alcohol and a loaded handgun. At the time the deputies decided to have the car impounded for towing, their apparent purpose was to get the car off the streets. We hold that the district court did not clearly err in holding that the impoundment was justified for caretaking purposes, and we conclude that the impoundment of the Camaro was reasonable under the Fourth Amendment.

**B**

Once officers have made a lawful decision to impound a vehicle, they may conduct an inventory search of the vehicle for three reasons: (1) to protect the owner's property while in police custody, (2) to prevent claims of lost, stolen, or vandalized property, and (3) to guard the police from danger. Colorado v. Bertine, 479 U.S. 367, 372 (1987). Inventory searches must be conducted according to standardized procedures, and the police must act in good faith and cannot search for the sole purpose of investigation. Id. However, an inventory search is not rendered unconstitutional simply because it also had an investigatory purpose, provided that is not the sole purpose. See United States v. Frank, 864 F.2d 992, 1001 (3d Cir. 1988).

Moraga contends that the search of the Camaro was investigative and not conducted in accordance with standard procedures, and thus cannot be a valid inventory search. This argument is belied by the record. At the suppression hearing, Sergeant Mark Lujan was called to testify as to the policies of the Sheriff's Department. The following colloquy ensued:

> Q. (By Mr. Tierney) Directing your attention, sir, to Section 2-48-2(a), what is the <u>official written policy</u> of the Valencia County Sheriff's Office as to <u>when a vehicle should be towed</u>?
> A. It states that the driver had — "<u>When the driver has been incapacitated,</u> hospitalized, wrecked it, or the vehicle cannot be released to a responsibly [sic] party."
> Q. And you instruct your officers on that policy, sir?
> A. Yes, I do.
> Q. Directing your attention now, sir, with respect to Section 2-48-3(c). What are the requirements of a deputy prior to a vehicle being towed? What do you instruct them to do?
> A. The policy states, "<u>The deputy will inventory the property in the vehicle to be towed and list it on the tow-in report</u>. . . . All other areas of the vehicle will be inventoried, including all containers, compartments or areas which might contain property. . . ."

(5 R. at 56 (emphasis added).) The district court found that this procedure was followed by the deputies in the instant case; the officers searched the car and listed the property on the tow-in report, except for the items that were tagged as evidence. This factual finding was not clearly erroneous.

Moraga further asserts that the purpose of the Camaro search was solely investigatory. Moraga's argument is based primarily on the fact that the deputies indicated on the tow-in form that the vehicle was to be held "for investigation,"

-12-

(Gov. Ex. 28), which he argues demonstrates that the initial purpose of the search was investigatory. This argument is a red herring. The same tow-in form that states that the vehicle was to be held "for investigation" also lists the contents of the vehicle. Based on this fact, the district court reasonably inferred that the officers decided to hold the Camaro for investigation <u>after</u> the inventory search, because they found alcohol and a weapon in the vehicle.

Sergeant Lujan testified at the suppression hearing that the Department's reasons for conducting an inventory search included safeguarding the property, checking for dangerous items, and making sure that the property would be returned to its owner. These are valid justifications for an inventory search. <u>Bertine</u>, 479 U.S. at 372. We hold that the district court did not clearly err in finding that the inventory search, required by official Sheriff's Department policy, was motivated at least in part by the reasons mentioned by Sergeant Lujan and not solely undertaken for the purpose of investigation.[3] Thus, the inventory search of the Camaro passes constitutional muster.

---

[3] In its order, the district court further concluded that the handgun "was properly seized under the inevitable discovery doctrine." <u>United States v. Moraga</u>, No. CR-01-964 JP, slip op. at 17. Because we hold that the search was a proper inventory search, we need not consider the issue of inevitable discovery.

-13-

## C

Moraga further contends that, regardless of the propriety of the inventory search of the Camaro, the evidence should be excluded under the blanket-suppression doctrine. Blanket suppression of all evidence seized may be warranted when law enforcement officers flagrantly disregard the terms of a search warrant. United States v. Medlin, 842 F.2d 1194, 1199 (10th Cir. 1988). Blanket suppression is reserved for "extraordinary" cases, which are "exceedingly rare." United States v. Foster, 100 F.3d 846, 852 (10th Cir. 1996). In the instant case, Moraga argues that the evidence seized from the Camaro during the inventory search should be excluded because Deputy Noah later searched under the hood for drugs without probable cause.

As the district court notes, our prior cases applying the blanket-suppression doctrine involve situations where police so far exceeded the terms of a written search warrant as to turn it into a general warrant. See, e.g., Medlin, 842 F.2d at 1199 ("When law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant."). We have not yet applied the doctrine to a warrantless search like Deputy Noah's search under the hood of the Camaro. Nonetheless, we need not now decide whether the blanket-suppression doctrine

might encompass a warrantless search, for, even if it did, Deputy Noah's actions do not constitute the sort of "flagrant disregard" for the Fourth Amendment, id., that would justify blanket exclusion of the evidence. Deputy Noah had no intention of using the drugs seized under the hood as evidence; he simply wanted to keep them from being sold on the street. For this reason, we agree with the district court that the blanket-suppression doctrine is inapplicable to the instant case.

## IV

In sum, we conclude that (1) Moraga lacks standing to challenge the search and seizure of the Taurus, (2) the Camaro was properly impounded, (3) the search of the Camaro was a valid inventory search, and (4) blanket suppression is not warranted. For these reasons, we **AFFIRM** the district court's denial of Moraga's motion to suppress, and Moraga's conviction is **AFFIRMED**.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge