**UNITED STATES of America,**

v.

**Jerry SCHNEIDERMAN, Jerry Ranallo, Larry Butler and Insertion Advertising Corp., Defendants.**

**No. 90 Cr. 0656 (RWS).**

United States District Court, S.D. New York.

Oct. 29, 1991.

Otto G. Obermaier U.S. Atty., S.D.N.Y.
(Katharine A. Bostick, Asst. U.S. Atty., of
counsel), New York City, for U.S.

Richard Ware Levitt, New York City, for
defendants Jerry Schneiderman and Inser-
tion Advertising Corp.

Gerald B. Lefcourt, P.C. (Joshua Dratel,
of counsel), New York City, for defendant
Jerry Ranallo.

Lipsitz, Green, Fahringer, Roll, Salisbury
& Cambria (Diarmuid White, of counsel),
New York City, for defendant Larry But-
ler.

## OPINION

SWEET, District Judge.

Defendants Jerry Schneiderman
("Schneiderman"), Jerry Ranallo ("Ranal-
lo"), Larry Butler ("Butler") and Insertion
Advertising Corp. ("Insertion Advertising")
have been charged in a fourteen count in-
dictment with selling and conspiring to sell
drug paraphernalia through the services of
an interstate conveyance under 21 U.S.C.
§ 857 and with laundering and conspiring
to launder the proceeds of such sales under
18 U.S.C. §§ 1956 and 1957.

The defendants have moved to suppress
all evidence seized pursuant to search war-
rants issued on August 20, 1990, to dismiss
the drug paraphernalia charges on grounds
that § 857 is unconstitutionally vague, and
to dismiss the money laundering charges
on grounds that the statute is not violated
by their conduct or that it is unconstitution-
ally vague as applied to their conduct. For
the reasons stated below, the motion to
suppress is denied. The motion to declare
§ 857 unconstitutional is granted, and the
charges against the defendants are dis-
missed. The constitutionality of § 1956
and § 1957 is not addressed.

## I. *The Statute*

The statute giving rise to the indictment
and the warrants at issue is 21 U.S.C.
§ 857. It was enacted in 1986 as part of
the Anti–Drug Abuse Act of 1986, Pub.L.
99–570, 100 Stat. 3207, in an attempt to
stem the flow of drug paraphernalia sales.
*Hearings Before the Subcomm. on Crime
of the House Comm. of the Judiciary on
H.R. 1625,* 99th Cong., 2d Sess. 16–17
(1986) [hereinafter *Hearings*] (statement
of Rep. Levine). It was proposed to "help
in the effort to end drug abuse by reem-
phasizing that society continues to oppose
any glamorization or acceptance of danger-
ous drug use." *Id.* at 18.

Section 857 provides:

(a) Unlawfulness

It is unlawful for any person—

(1) to make use of the services of
the Postal Service or other interstate
conveyance as part of a scheme to sell
drug paraphernalia;

(2) to offer for sale and transporta-
tion in interstate or foreign commerce
drug paraphernalia;

(3) to import or export drug para-
phernalia.

(b) Penalties

Anyone convicted of an offense under subsection (a) of this section shall be imprisoned for not more than three years and fined not more than $100,000.

(c) Seizure and forfeiture

Any drug paraphernalia involved in any violation of subsection (a) of this section shall be subject to seizure and forfeiture upon the conviction of a person for such violation. Any such paraphernalia shall be delivered to the Administrator of General Services, General Services Administration, who may order such paraphernalia destroyed or may authorize its use for law enforcement or education purposes by Federal, State, or local authorities.

(d) Definition of "drug paraphernalia"

The term "drug paraphernalia" means any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under the Controlled Substances Act (title II of Public Law 91–513). It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, or amphetamines into the human body, such as—

(1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(2) water pipes;

(3) carburetion tubes and devices;

(4) smoking and carburetion masks;

(5) roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;

(6) miniature spoons with level capacities of one-tenth cubic centimeter or less;

(7) chamber pipes;

(8) carburetor pipes;

(9) electric pipes;

(10) air-driven pipes;

(11) chillums;

(12) bongs;

(13) ice pipes or chillers;

(14) wired cigarette papers; or

(15) cocaine freebase kits.

(e) Matters considered in determination of what constitutes drug paraphernalia

In determining whether an item constitutes drug paraphernalia, in addition to all other logically relevant factors, the following may be considered:

(1) instructions, oral or written, provided with the item concerning its use;

(2) descriptive materials accompanying the item which explain or depict its use;

(3) national and local advertising concerning its use;

(4) the manner in which the item is displayed for sale;

(5) whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(6) direct or circumstantial evidence of the ratio of sales of the item(s) to the total sales of the business enterprise;

(7) the existence and scope of legitimate uses of the item in the community; and

(8) expert testimony concerning its use.

(f) Exemptions

This section shall not apply to—

(1) any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items; or

(2) any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and traditionally intended for use with tobacco products, including any pipe, paper, or accessory.

21 U.S.C. § 857.

The statute was repealed in 1990 and reenacted as 21 U.S.C. § 863. Pub.L. 101–647, § 2401(d), 104 Stat. 4859 (1990). The

only difference between the two statutes is in their scope. Section 863(a) drops its predecessor's scheme requirement, *compare* 21 U.S.C. § 857(a)(1), and applies to all sales of drug paraphernalia, including intrastate transactions. *See* 21 U.S.C. § 863(a)(1); H.R.Rep. 681, 101st Cong., 2d Sess. (1990), U.S.Code Cong. & Admin.News 1990, p. 6472. The remaining provisions are the same.

## II. *Prior Proceedings and Factual Background*

On August 22, 1990, the Government obtained warrants to search the offices of Insertion Advertising and Central City Restaurant Supply Co. ("Central City") at 132 West 24th Street in Manhattan, to search Schneiderman's premises, and to seize three bank accounts. The warrants were based solely on affidavits supplied by United States Customs Agent Peter Arnone (the "Agent"), and were issued by the Honorable James C. Francis IV (the "Magistrate") and executed that day.

In the affidavits, the Agent swore that, among other things:

(1) He had been a Customs Agent for seven years and had been investigating drug paraphernalia cases for fourteen months.

(2) He had probable cause to believe that Insertion Advertising and Central City were violating drug paraphernalia and money laundering laws.

(3) An investigation showed that Insertion Advertising and Central City were closely intertwined, sharing a common space, phone number, and ownership.

(4) In searches at other locations throughout the United States from January 1987 to the present, documents were found showing involvement by Insertion Advertising in drug paraphernalia sales. (The affidavit summarized several such documents and attached examples.)

(5) All of Insertion Advertising's and Central City's income and moneys in their bank accounts were the fruits of an illegal trade.

(6) Various sums of money were transferred from the companies' accounts to Schneiderman's bank accounts.

(7) Neither Insertion Advertising nor Central City had any legitimate source of income.

Numerous items of alleged drug paraphernalia, as well as business papers, were seized from both premises and from two delivery vehicles parked outside the businesses.

On October 20, 1990, the defendants were named in a fourteen count indictment. The first count charges a conspiracy to violate federal drug paraphernalia and money laundering laws under 18 U.S.C. § 371. The second through sixth counts charge that the defendants used interstate conveyances as part of a scheme to sell drug paraphernalia in violation of 21 U.S.C. § 857(a)(1). The seventh through twelfth counts charge the defendants with selling drug paraphernalia in interstate commerce in violation of 21 U.S.C. § 857(a)(2). Count 13 charges Schneiderman, Ranallo and Insertion Advertising with violating 18 U.S.C. § 1956(a)(1)(A)(i). Count 14 charges Schneiderman and Insertion Advertising with violating 18 U.S.C. § 1957(a).

The present motion was made on March 29, 1991. Oral argument was heard on September 20, and final submissions were received from the defendants on October 11, 1991.

## III. *The Search Warrants*

Defendants challenge the Magistrate's finding of probable cause on several grounds. First, they argue that none of the items listed in the affidavits as drug paraphernalia is per se contraband and that no physical description of any of the items accompanied the affidavits. Second, they attack the Agent's expertise. Third, the defendants point out a number of inconsistencies and falsehoods in the affidavits, namely: that Insertion Advertising and Central City had no other source of income other than that derived from trafficking in drug paraphernalia; that the companies made large sales of drug paraphernalia; that all of Central City's sales consisted of

drug paraphernalia; and that water pipes were sold for a drug-related purpose. Fourth, they contend that the Agent intentionally withheld information from the Magistrate weighing against probable cause.

A defendant arguing that a warrant was issued on less than probable cause faces a heavy burden. " 'Where the circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a common-sense, manner.' " *Rivera v. United States,* 928 F.2d 592, 602 (2d Cir.1991) (quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)). In a marginal case, preference is to be accorded to the warrant. For the reasons stated below, the warrants were adequately supported by probable cause.

■ Defendants' contention that it was improper for the Magistrate to rely on the Agent's "bogus" claim of expertise is without merit. A government agent's expertise is an important factor to be considered in making a probable cause determination. *See, e.g., United States v. Benevento,* 836 F.2d 60, 71 (2d Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988); *United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985). The Agent's affidavit stated that he had been with the United States Customs Service for seven years and had worked principally on drug paraphernalia matters for the last fourteen months. This kind of expertise is frequently helpful when determining whether there is probable cause, and the Magistrate was entitled to rely upon it. *United States v. Glass Menagerie, Inc.,* 721 F.Supp. 54, 58 (S.D.N.Y.1989).

■ Defendants also contest the Agent's description of the objects at issue. None is contraband per se, but the possibility of innocent uses for such objects does not negate probable cause. *United States v. Main Street Distrib., Inc.,* 700 F.Supp. 655, 660 (E.D.N.Y.1988). Section 857 provides an exhaustive list of items that may be considered contraband, and, assuming that the statute is constitutional, the Magistrate could rely on the Agent's description in determining whether any of these items fall within § 857's terms.

In particular, the defendants contend that the Agent failed to describe the physical attributes of any item and to set forth a basis for determining that a particular item might be considered drug paraphernalia under the statute. In many instances the Agent simply "translated" an invoice description to match § 857's terms. However, the affidavit did include two exhibits depicting water pipes, one of which, Exhibit C, was related to a sales invoice seized elsewhere detailing sales of water pipes to Insertion Advertising. Exhibit C consists of illustrations of water pipes. Beneath each pipe is a number that in certain instances corresponds to item numbers on the seized invoice. Since water pipes do fall within § 857's definition list, 21 U.S.C. § 857(d)(2), and this invoice indicates that Insertion Advertising was purchasing a large number of water pipes, there was sufficient probable cause.

This finding is further supported by the other invoices and circulars that were seized. Although no physical description of many of the items listed was provided, given the correlation between the above invoice and the Agent's accurate description of the objects as water pipes, and the Agent's expertise in these matters, the Magistrate was entitled to rely on the descriptions in making the probable cause determination. *See Glass Menagerie,* 721 F.Supp. at 59.

Moreover, the affidavit also was based on information provided by other Customs Agents, a confidential informant, and financial investigators. This information includes a telephone call made by an informant/employee of an alleged "headshop" and taped by Customs Agents during which the informant placed an order with Insertion Advertising for 16 water pipes, 3 suede snuff kits, and 36 bulk inhalers. The order was delivered to the purchaser via United Parcels Service ("UPS"). The item numbers for the water pipes ordered corre-

spond to water pipes depicted in a flier distributed by Insertion Advertising that was also attached to the affidavit.

The Magistrate was entitled to consider all of the business dealings of the defendants and the Agent's expertise in making a probable cause determination. Since it can be inferred from the affidavit that the items sold by the defendants are drug paraphernalia, the search warrants are adequately supported by probable cause. *Glass Menagerie*, 721 F.Supp. at 58–59.

■ More troubling, though, are the defendants' allegations that the affidavits contain falsehoods. In particular, they point to the Agent's assertion that neither Insertion Advertising nor Central City had a source of income besides that from the sales of drug paraphernalia. *See* Rider Affidavit to Search Warrant ¶¶ 11, 13. Defendants correctly note that Exhibit A to the affidavit, an Insertion Advertising sales flier, lists several items that cannot be considered drug paraphernalia, including sunglasses, sunglass leashes, nail care sets, key rings, and condoms. Exhibit B, a Customs list summarizing Insertion Advertising invoices, consists mostly of entries for "RUSH," [1] which does not seem to fall within any of § 857's definitions. Moreover, it appears that Central City sold only two items: nitrous oxide propellant cartridges and whipped cream making machines, neither of which fall directly within § 857's terms.[2]

Assuming that defendants' contention is correct and that the assertions by the Agent were false, there was still an adequate amount of information supplied in the affidavits upon which a probable cause determination could be made. To be entitled to a *Franks* hearing, defendants would have to make a substantial showing that the Agent knowingly or intentionally made false statements, and that these statements were necessary to a finding of probable

cause. *Rivera*, 928 F.2d at 604. Ignoring the alleged false statements, there still remains the invoices seized at other locations, the two exhibits depicting water pipes, information supplied by a confidential informant, and additional investigations carried out by Customs Agents. As a whole, there remains sufficient information within the affidavits to support a finding of probable cause.

■ Defendants also challenge the Agent's description of the water pipes as drug paraphernalia. In support of this contention, they argue that the objects in question are protected by United States Patent No. 3,881,499. They note that the Agent fails to mention this fact explicitly in the affidavit, although a patent notice does appear at the bottom of Exhibits C and D. However, the patent itself is for a "Water Pipe or Bong," and it notes that such devices are used "to smoke organic materials, including tobacco." Assuming that the statute is valid and given § 857(d)(2)'s explicit inclusion of "water pipes" within its definition of drug paraphernalia, it is difficult to see how the existence of the patent helps the defendants' argument against probable cause. *See Glass Menagerie*, 721 F.Supp. at 60.

■ Finally, the defendants argue that the search should be suppressed because the Agent withheld material evidence regarding intent. In particular, they point to a flyer distributed by Insertion Advertising alerting retailers to the impending illegality of products containing butyl nitrate, including RUSH, and to two telephone conversations with Insertion Advertising personnel during which the government informant was told that certain products were not available because they were too controversial or because there was a question as to their legality.

---

1. Prior to February 1989, Rush and like products contained butyl nitrite. Butyl nitrite products designed to be inhaled were banned as hazardous under the Consumer Product Safety Act in February of 1989. 15 U.S.C.A. § 2057a (West Supp.1990). At the time in question, sales of RUSH were legal.

2. In footnote 2 of the affidavit, the Agent acknowledges that "[n]itrous oxide is legally used as an anesthetic and in aerosol cans such as whip cream dispensers."

Omitted information may also serve as the basis for a *Franks* challenge. *United States v. Campino*, 890 F.2d 588, 592 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1787, 108 L.Ed.2d 788 (1990). Recklessness may be inferred where an omission is "clearly critical" to the probable cause determination. *Rivera*, 928 F.2d at 604. Here, the omitted information does not reach the required degree of significance. The butyl nitrate products, as discussed above, are arguably outside of § 857's terms. Although the phone conversations demonstrate the defendants attempted to avoid questions of legality, in one of the conversations the informant succeeded in placing an order for various water pipes that were shipped via UPS. The conversations therefore cut both ways, and their omission was not "clearly critical" to a probable cause determination.

Viewing the affidavits as a whole, there was adequate information upon which the magistrate could make a probable cause determination. Defendants motions to suppress and for a *Franks* hearing are denied.

## IV. *Section 857*

■ Defendants challenge the constitutionality of § 857 on three grounds. First, they argue that it fails to provide a scienter requirement. Second, they contend that it fails to provide fair notice of what is proscribed and to guard against arbitrary and discriminatory enforcement. Third, they assert that it impermissibly shifts the burden of proof to the defendants. Based on the following conclusions, § 857 is held to be unconstitutionally vague.

### A. The Constitution

The Fifth Amendment's Due Process clause requires that all persons of common intelligence "not be forced to guess at the meaning of the criminal law." *Smith v. Goguen*, 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974). In fact, Due Process abhors broadly written, ill-defined criminal enactments, for "[i]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *United States v. Reese*, 92 U.S. 214, 221, 23 L.Ed. 563 (1876).

In particular, vague laws are to be avoided since they "trap the innocent by not providing a fair warning," and "impermissibly delegate[ ] basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972). Moreover, "the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea.*" *Colautti v. Franklin*, 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596 (1979).

■ "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion." *Morissette v. United States*, 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952). It instead is a basic tenet. Due Process therefore allows the imposition of strict criminal liability only in narrow instances, typically regulatory measures, where the penalties are relatively small. *See id.* at 258, 72 S.Ct. at 247; *see also Main Street Distr.*, 700 F.Supp. at 663.

■ However, " '[m]ere omission of intent in [a] statute will not be construed as eliminating that element from the crimes denounced'; rather, Congress will be presumed to have legislated against the background of our traditional legal concepts which render intent a critical factor...." *United States v. United States Gypsum Co.*, 438 U.S. 422, 437, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854 (1978) (quoting *Morissette*, 342 U.S. at 263, 72 S.Ct. at 249). Additionally, there is a presumption favoring the constitutionality of congressionally enacted statutes and a requirement that criminal statutes be read in a narrow fashion, favoring leniency. *See Liparota v. United States*, 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985). Nevertheless, these rules of construction must be bal-

anced against the precepts of the Bill of Rights. *See, e.g., United States v. Eichman*, — U.S. —, 110 S.Ct. 2404, 2408–09, 110 L.Ed.2d 287 (1990); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Reese*, 92 U.S. at 221.

## B. Drugs and Drug Paraphernalia

In recent years, Congress has actively addressed the Nation's use of drugs. Laws have been passed outlawing the importation, distribution, sale, possession, and manufacturing of drugs; old laws have been revisited and revamped; and other bills have been passed enhancing the funds allocated to enforcement agencies. *See, e.g.*, Crime Control Act of 1990, Pub.L. 101–647, 104 Stat. 4859; Anti–Drug Abuse Act of 1988, Pub.L. 100–690, 102 Stat. 4382; Anti–Drug Abuse Act of 1986, Pub.L. 99–570, 100 Stat. 3207. Part and parcel with this attention has been an effort to stretch laws to their limits.

As a result, the United States may now prosecute those found in international waters on board a vessel containing contraband with importing controlled substances into the United States. *See* 46 U.S.C.App. § 1903; *United States v. Mena*, 863 F.2d 1522 (11th Cir.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 109, 107 L.Ed.2d 72 (1989). The Attorney General has been delegated the power to temporarily classify a substance as a Schedule I narcotic without a hearing, rendering the substance prohibited. *See* 21 U.S.C. § 811(h); *Touby v. United States*, — U.S. —, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991). Enhanced sentences are imposed upon those who sell drugs within 1000 feet of any school or university, whether or not they are aware of their presence within the proscribed distance. *See* 21 U.S.C. § 860(a); *United States v. Falu*, 776 F.2d 46 (2d Cir.1985). A less than clear statutory definition can lead to the imposition of a penalty of life imprisonment without parole. *See* 21 U.S.C. § 848(b); *United States v. Torres*, 683 F.Supp. 56 (S.D.N.Y.1988).

When Congress enacted its drug paraphernalia statute in 1986, it had an abundance of prior interpretations of paraphernalia laws to draw upon in discerning the law's limits. Such laws first appeared in the mid–1970s. These early attempts at regulating sales of drug paraphernalia frequently were struck down as unconstitutionally vague. Courts often found that their scope included everyday items and that their terms were readily capable of being arbitrarily enforced. In 1979, the Drug Enforcement Agency proposed the Model Drug Paraphernalia Act ("Model Act") as a cure. Its key ingredient was the inclusion of an intent standard. *See* Note, *The Model Drug Paraphernalia Act: Can We Outlaw Head Shops—And Should We?*, 16 Ga.L.Rev. 137, 154 (1981). Since then, the Model Act's criminal provisions have withstood multiple challenges. *See, e.g., Levas & Levas v. Village of Antioch*, 684 F.2d 446 (7th Cir.1982); *Casbah, Inc. v. Thone*, 651 F.2d 551 (8th Cir.1981), *cert. denied*, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982).

Additionally, the Supreme Court upheld an ordinance requiring businesses to obtain a license to sell drug paraphernalia in 1982. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). The ordinance at issue there was not based upon the Model Act, but did prohibit anyone from selling an object "designed or marketed for use" with drugs without a license. Using the relaxed standard of review that applies to civil regulations, the Court found that the ordinance was somewhat ambiguous but not unconstitutionally vague, and that it provided sufficient notice to retailers of such objects. *Id.* at 500–04, 102 S.Ct. at 1194–96.

Against this backdrop, Congress enacted § 857, a criminal statute. Although its sponsor, Representative Mel Levine, stated that § 857 was "drafted closely after the Model Drug Paraphernalia Act," *Hearings, supra*, at 15, it in fact differs significantly from the Model Act. In its most significant departure, § 857 omits the Model Act's scienter standard.

## C. Scienter

"A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory 'But I didn't mean to,' and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution." *Morissette*, 342 U.S. at 250–51, 72 S.Ct. at 243. Statutes imposing strict criminal liability are therefore permissible only in narrow instances.

Defendants contend that although Congress patterned § 857 after the Drug Enforcement Agency's Model Drug Paraphernalia Act ("Model Act"), the statute is fatally flawed since it does not replicate the Model Act's scienter standard. This omission, argue defendants, evidences Congress's intention that scienter not be an element under § 857.

Section 857(a) states:

It is unlawful for any person—

(1) to make use of the services of the Postal Service or other interstate conveyance as part of a scheme to sell drug paraphernalia;

(2) to offer for sale and transportation in interstate or foreign commerce drug paraphernalia; or

(3) to import or export drug paraphernalia.

21 U.S.C. § 857(a). The statute is facially devoid of a mens rea requirement. Its Model Act counterpart states:

It is unlawful for any person to deliver, possess with *intent* to deliver, or manufacture with *intent* to deliver, drug paraphernalia, *knowing, or under circumstances where one reasonably should know*, that it will be used to ... conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this Act.

Model Drug Paraphernalia Act, art. II, § C (1979) (emphasis added).

Excision of such an important element of the offense could not have been inadvertent. Congress is well-versed in the variations between the different mens rea requirements and is fully capable of selecting one standard over another. *See Morissette*, 342 U.S. at 264, 72 S.Ct. at 250; *United States v. Morris*, 928 F.2d 504 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 72, 116 L.Ed.2d 46 (1991). Moreover, explicit scienter requirements are found in related statutes. *See, e.g.*, 21 U.S.C. § 843(a)(6) ("knowingly or intentionally ... possess any ... equipment specially designed or modified to manufacture a controlled substance, with intent to manufacture a controlled substance"); 21 U.S.C. § 844(a) ("knowingly or intentionally ... possess a controlled substance"). Here, an intent to omit a scienter requirement is evident.

This conclusion is bolstered by legislative history indicating that the provision's focus was on paraphernalia itself, not potential defendants. For instance, Representative Levine stated that the legislation was targeted at "merchandise which is designed and intended to be used for the sole purpose of abusing drugs." *Hearings, supra,* at 16–17. Much focus was placed on what types of objects were included within the statute's terms, *see, e.g., Hearings, supra,* at 54, and whether the proposed list of objects differentiated between "hard core" drug paraphernalia and dual-use objects, *see, e.g., id.* at 65–66. Harry Meyers of the Drug Enforcement Agency's Office of Chief Counsel, in referring to "hard core" paraphernalia, explained that "[i]t is not necessary to show that intent [i.e., for an unlawful purpose] for someone who is selling something that is designed for use with drugs." *Id.* at 69. However, it was also explained to Congress that experience under the Model Act showed that it can be difficult to prove a defendant's intent when the objects in question have both legitimate and illegitimate uses. *See id.* at 65, 68. It therefore can be inferred that Congress deliberately omitted an intent requirement from the statute in order to draw within the statute's terms as many objects as possible.

Nevertheless, the Government contends that the statute includes an implied requirement that the Government prove the defendants *"knowingly"* sold drug parapherna-

lia. *See* Government's Memorandum of Law 49 (emphasis in original). But the Government also contends that it need only show that the items upon which the charges are based are drug paraphernalia by "virtue of their objective characteristics, their nature, and the descriptions and circumstances set forth in" § 857. Then, if the "defendants knew the general nature and character of the items involved," they could be convicted. *Id.* The Government submits that this latter, "objective," approach is appropriate for § 857 offenses several pages later. *See id.* at 54.

Similar confusion over the scienter requirement can be found in the case law. The court in *Main Street Distrib.*, faced with a similar constitutional challenge, found that the statute's focus was on a defendant's use of interstate transporters "to facilitate transactions involving items that a defendant has designed or intends for use as drug paraphernalia." 700 F.Supp. at 666. It based its analysis in part on the language defining drug paraphernalia in § 857(d) and on cases construing like language in other statutes as to require scienter.

Working with the same language, the court in *United States v. Dyer*, 750 F.Supp. 1278 (E.D.Va.1990), held that the statute did not require proof of a defendant's subjective intent. Instead, "a violation may be established solely by reference to design features or objective circumstances, provided that the government shows the defendant's awareness of the general nature of the object." 750 F.Supp. at 1284.[3]

Falling between these two positions is the Sixth Circuit's view. In *United States v. 57,261 Items of Drug Paraphernalia,* that court stated that "[t]he statute requires an intent to distribute the items for drug use. The person to whom the statute is being applied ... must have knowledge that there is a *strong probability* that the items will be used in this way." 869 F.2d 955, 957 (6th Cir.) (emphasis added), *cert. denied,* 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989). That the three courts

addressing the issue have failed to agree on a scienter standard can be only because one is not there.

The statute defines "drug paraphernalia" as objects that are "primarily intended or designed for use in" drug-related activities. 21 U.S.C. § 857(d). It is argued that this definition supplies scienter when read into § 857(a). However, as the *Dyer* court demonstrated, the structure of the act argues against this conclusion. If the language referred to a defendant's intent toward the objects, then Congress would not have followed it with a laundry list of terms describing paraphernalia, or a separate subsection of matters to be considered in determining whether an object is paraphernalia. Rather, Congress was attempting to further define what types of objects are "primarily intended or designed for use in" drug-related activities. There is no language in § 857(d) directed at potential defendants per se and the invitation to read an intent element within it into § 857(a) is declined. *Cf. Dyer,* 750 F.Supp. at 1288.

The court in *Main Street Distrib.* reached an opposite conclusion. That court found that by including the term "drug paraphernalia" in the offense section, any scienter requirement within that definition is included. 700 F.Supp. at 666. However, any statute that made it an offense to sell drug paraphernalia would have to state that it is "unlawful to sell drug paraphernalia." Indeed, under § 857 it is unlawful for the defendant "to offer for sale and transportation in interstate or foreign commerce [anything "primarily intended or designed for use" with drugs]." In applying these terms, a decisionmaker must first determine whether an object at issue is drug paraphernalia. To do so, the decisionmaker would turn to the statute's definitional section and apply it to the object. If the object is found to be drug paraphernalia, the decisionmaker would then turn to the offense section and apply it to the defendant's conduct.

The "primarily intended" language refers to the objects at issue and arguably to

---

**3.** The parties in *Dyer* agreed that § 857 included a scienter requirement. The dispute concerned

the exact nature of the requirement. *See Dyer,* 750 F.Supp. at 1283.

their manufacturer's or ultimate end-user's designs. It does not relate to the defendant's state of mind; under the terms of § 857, the defendant has only to have sold such objects. The definitional language never shifts the focus onto the defendant's scienter. *See also Franza v. Carey*, 518 F.Supp. 324, 339 (S.D.N.Y.1981) (under Model Act, "seller's intent that an item be used for a drug-related purpose defines drug paraphernalia while his actual or constructive knowledge that the sale or potential sale will facilitate illegal drug use defines the offense").

Section 857 is therefore a strict liability offense. The defendant's mens rea is not analyzed. Instead, one looks at whether a person who designed an object had a drug-related purpose or whether an end-user can use it in a drug-related activity. That an object may have legitimate uses is only a factor to consider when determining whether that object is drug paraphernalia, and not when determining the defendant's intent.

Due Process permits the imposition of strict criminal liability. However, this allowance is narrow, generally limited to statutes and offenses that are regulatory in nature. *Morissette*, 342 U.S. at 260, 72 S.Ct. at 248; *cf. Hoffman Estates*, 455 U.S. at 504, 102 S.Ct. at 1196. Section 857's nature is criminal. It does not attempt to license sales of paraphernalia, it penalizes them. It carries a penalty of not more than three years imprisonment and a $100,-000 fine. Moreover, violating its terms can serve as a predicate offense for other crimes, including the money laundering charges alleged here, furthering the statute's criminal nature and the penalty that may be imposed. *See, e.g.,* 18 U.S.C. § 1956(c)(7)(D).

*Hoffman Estates* is also distinguishable. There, the Supreme Court found a scienter requirement in a civil licensing regulation's definition of drug paraphernalia. That regulation applied to objects "designed or marketed for use" with drugs. 455 U.S. at 506, 102 S.Ct. at 1197. In a pre-enforcement facial challenge brought by a retailer, the Court found that its definition "re-

quires scienter, since a retailer could scarcely 'market' items 'for' a particular use without intending that use." *Id.* at 502, 102 S.Ct. at 1195; *see also Levas & Levas*, 684 F.2d at 454–56 (pre-enforcement facial challenge to ordinance imposing fine of $500 for sale of drug paraphernalia denied).

The legislation here is a criminal statute, and the challenge is being made post-enforcement. Section 857 does not include the "marketed for use" language the Supreme Court found acceptable, but instead targets objects "primarily intended or designed for use" with drugs. The Supreme Court itself found that "designed for use" did "contain ambiguities," 455 U.S. at 502, 102 S.Ct. at 1195, and that its focus is on the manufacturer of the objects, *id.* at 501 n. 19, 102 S.Ct. at 1195 n. 19. A stricter examination of this criminal statute must be performed. Here, there is no unambiguous intent language and no language that requires the present defendants' intent to be analyzed.

The Court therefore finds that 21 U.S.C. § 857 is a strict liability offense that is criminal in nature.

**D. Vagueness**

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.... [T]he more important aspect of the vagueness doctrine 'is not the actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.' " *Kolender v. Lawson*, 461 U.S. 352, 357–58, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974); citations omitted).

Defendants' vagueness challenge centers on the statute's definition of drug paraphernalia. They argue that the phrase "primarily intended or designed for use" is vague as applied to their conduct and that

the list of fifteen examples and the eight factors to consider when making a determination of whether an object is drug paraphernalia do not save the definition.[4]

The gist of the problem is that the word "primarily" changes the focus of the determination. The phrase is not defined further. Instead, the statute presents a number of factors to consider in making a determination. The list of objects, though, provides little guidance. Most seem to be pipes of one sort or another, including "bongs,"[5] "chillums,"[6] and "metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes." *See also Hearings, supra,* at 118–26 (statement of L. Maccubbin). In fact, any type of pipe imaginable is included in the list. Nor is the list exclusive, for the Government contends that items not specifically listed may also be considered paraphernalia under the rest of § 857(d), such as scales.

The statute's focus is not placed on any objective factor, but on the purposes of potential users or designers. To divine what these purposes may be in a particular case, the statute suggests examining a number of factors. These include advertising, instructions concerning an object's use, whether a defendant is a licensed distributor of tobacco products, and the scope of legitimate uses for an object in the community. 21 U.S.C. § 857(e). If a decisionmaker is still uncertain, "expert testimony concerning [an object's] use" may be considered. *Id.* § 857(e)(8).

However, none of these factors aids the average person in determining whether particular conduct falls within the statute's terms. Its vagueness instead allows it to serve as a tool of arbitrary enforcement.

An example illustrates why this is so. At oral argument, the Government produced a pocket scale sold by the defendants. The scale is calibrated in grams on one side, ounces on the other. The Government submitted that the scale was an example of "hard core" drug paraphernalia.[7] The defense has since submitted a number of these scales, as well as a recent article from the *New York Times* trumpeting their handy use as postal scales. *Postal Scale Grips, Weighs, Then Stores Practically Anywhere,* N.Y. Times, Aug. 3, 1991.

To use the device as a postal scale, one takes an envelope and its contents, places it all inside an alligator clip, suspends the device from one's finger and reads the weight using the calibrated markings. Then the appropriate postage is placed on the envelope, and it can be sent on its way.

To use the device as drug paraphernalia, one takes an envelope and its contents, places it all inside an alligator clip, suspends the device from one's finger and reads the weight using the calibrated markings. Then one charges the appropriate price for the contraband. Or one can simply remove the alligator clip and use it as a roach clip.[8]

Similar illustrations are easily imagined using pipes, baggies, tobacco papers, stash cans, paper clips, spoons, straws, razor blades, etc. *See also* U.S. Int'l Trade Comm., Report on Investigation No. 322–277, at 18–19. Many objects that fall within the statute's terms have dual purposes. Differentiating between purposes is at best guesswork, and the statute's broad lan-

---

4. Constitutionally protected conduct is not implicated by the statute, precluding an overbreadth analysis. *Hoffman Estates,* 455 U.S. at 496–97, 102 S.Ct. at 1192–93.

5. See United States Patent No. 3,881,499.

6. "The part of a water pipe that contains the substance (as tobacco or hashish) which is smoked; ... a funnel-shaped clay pipe for smoking. *Webster's New Collegiate Dictionary* 193 (1977).

7. Though a scale does not fall directly within any of the categories of objects specifically list-

ed as drug paraphernalia in § 857(d), one can see how it comes within its terms.

The Senate recently proposed amending the definition of drug paraphernalia in § 857's replacement. In particular, the proposed amendments would add scales and containers for storing or concealing contraband to the list of objects considered paraphernalia. *See* 137 Cong. Rec. S8880 (daily ed. June 27, 1991).

8. "[O]bjects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand." 21 U.S.C. § 857(d)(5).

guage offers no guidance. The concerns about this very language initially led both the Department of Justice and the Postal Service to oppose it. *See Hearings, supra,* at 54 (statement of J. Knapp, Deputy Ass't Attorney General, U.S. Dep't of Justice); *id.* at 61 (statement of J. Swagerty, Ass't Chief Inspector, U.S. Postal Inspection Service). The statute attempts to cure this problem by exempting those people who are authorized to distribute such items or those items that are "traditionally intended for use with tobacco products." 21 U.S.C. § 857(f). However, the exemption is much more limited in scope than the statute's reach.[9]

The defendants' conduct further illustrates the infirmity. They sought to avoid illegal or controversial products to the point of refusing to sell certain products and of sending their customers fliers informing them of the impending illegality of one of their products. Yet even after what appears to have been a conscious effort at compliance, they find themselves in a "trap for the wary as well as the unwary." *Gentile v. State Bar of Nevada,* ―― U.S. ――, ――, 111 S.Ct. 2720, 2732, 115 L.Ed.2d 888 (1991).

The inclusion of a scienter requirement often will save an otherwise vague statute. *Hoffman Estates,* 455 U.S. at 499, 102 S.Ct. at 1193. Additionally, the rule of lenity may save an ambiguous statute by narrowly construing it. *Liparota,* 471 U.S. at 427, 105 S.Ct. at 2089. However, there is no scienter standard in § 857 that applies to a defendant's conduct and, even if under a lenient construction the statute is limited to "hard core" paraphernalia, its application is still vague, as set forth above.

Once again on this issue, *Hoffman Estates* is distinguishable. The drug paraphernalia ordinance upheld there in a pre-enforcement challenge was regulatory in nature. It imposed a fine of $10 to $500

for selling drug paraphernalia without a license or for otherwise violating its terms.[10] Drug paraphernalia was defined as any item "designed or marketed for use" with drugs. The Supreme Court found the "designed ... for use" standard marginally clear. It was bolstered by "marketed for use," which "described a retailer's intentional display and marketing of merchandise," thus providing scienter. *See* 455 U.S. at 499–503, 102 S.Ct. at 1193–96.

Section 857 is a criminal statute. A greater degree of specificity is required. *Id.* at 498, 102 S.Ct. at 1193. While "designed for use" may be marginally acceptable in a regulatory context, it is unacceptable in a criminal one. Moreover, § 857 lacks the language providing scienter for specific defendants that the regulation in *Hoffman Estates* had. Instead, here the issue is how some unknown person intends to use the object. That a defendant, as here, is located at some mid-point in the commerce stream is irrelevant. The addition of the word "primarily" does not add guidance; it moves the analysis away from the definite to the nebulous.

The statute also encourages arbitrary enforcement. The Government contends that at trial it will show through the various factors listed in § 857(e) that the objects at issue are drug paraphernalia. No doubt this will consist mostly of expert testimony concerning their use, advertising, and sales, as permitted by § 857(e)(8). No doubt the defendants will put on their own experts who will testify in opposition to the Government's experts. Whether or not criminal guilt has been established may well be determined solely upon expert testimony.

Such a result breeds arbitrary prosecutions and inconsistent results. If a particular enforcement agent on a particular day sees a particular merchant selling a scale

---

9. Presumably any stationery store that sells postal scales is not exempt from the statute's terms.

10. The ordinance challenged in *Hoffman Estates* provided that:

It shall be unlawful for any person or persons as principal, clerk, agent or servant to sell any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs....

Village of Hoffman Estates Ordinance No. 969–1978 § 1; *see* 455 U.S. at 506, 102 S.Ct. at 1197.

or pipe, and at that moment believes the scale or pipe to be paraphernalia, an arrest will be made, "making easy the roundup of so-called undesirables." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 171, 92 S.Ct. 839, 848, 31 L.Ed.2d 110 (1972). It will be up to the court to step inside the net to determine whether that day's object, under that day's circumstances, with the guidance of present day experts, is indeed paraphernalia. Under such circumstances, the statute is nothing more than "a convenient tool for 'harsh and discriminatory enforcement by . . . prosecuting officials, against particular groups deemed to merit their displeasure.'" *Id.* at 170, 92 S.Ct. at 847 (quoting *Thornhill v. Alabama*, 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–42, 84 L.Ed. 1093 (1940)).

The perils of strict liability and arbitrariness are particularly acute when, as here, a post hoc, ad hoc determination must be made. *Colautti v. Franklin*, 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596 (1979). Although drugs and drug merchandizing wreak terrible costs on our society, and Congress may do what it can to address these problems, the Constitution does prescribe limits. Here, the limits imposed by the Fifth Amendment's Due Process clause are breached. Section 857 is ambiguous and lacks a scienter requirement. It fails to provide fair warning and to prevent arbitrary prosecutions. Moreover, "this is not a case where further precision in the statutory language is either impossible or impractical," *Kolender*, 461 U.S. at 361, 103 S.Ct. at 1860, for the Model Statute provides a valid alternative. *See, e.g., Levas & Levas*, 684 F.2d 446. 21 U.S.C. § 857 is unconstitutional. The counts in the indictment charging the defendants with selling and conspiring to sell drug paraphernalia are therefore dismissed.

### V. *Money Laundering*

Defendants also challenge the application of the Money Laundering Control Act, 18 U.S.C. §§ 1956, 1957, to their behavior and its constitutionality. However, the two money laundering counts are based solely on the alleged violations of the drug paraphernalia statute. 21 U.S.C. § 857(a).

Since this opinion holds that § 857 is unconstitutional, these contentions will not be addressed. The money laundering counts against the defendants are dismissed in view of the dismissal of the underlying § 857 counts.

### *Conclusion*

For the reasons stated above, defendants motion to suppress is denied. Defendants motion declaring 21 U.S.C. § 857 unconstitutional is granted, and the indictment against the defendants dismissed.

It is so ordered.