**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Arvle Edgar MEDLIN,
Defendant–Appellee.**

**No. 87–2041.**

United States Court of Appeals,
Tenth Circuit.

March 24, 1988.

Kenneth P. Snoke, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., with him on the brief), Tulsa, Okl., for plaintiff-appellant.

Don E. Gasaway of Gasaway & Levinson, P.A., Tulsa, Okl., for defendant-appellee.

Before LOGAN, SETH and BARRETT, Circuit Judges.

SETH, Circuit Judge.

The United States takes this appeal from the trial court's order suppressing all evidence seized in a search of Arvle Edgar Medlin's residence including that evidence which was particularly described in the search warrant. The trial court suppressed the evidence after an evidentiary hearing ordered by our decision in *United States v. Medlin*, 798 F.2d 407 (10th Cir.) (*Medlin I*).

The search, by federal and local officers, which led to the seizure of the subject evidence was made pursuant to a warrant issued to the federal officers. It authorized the search for and seizure of "firearms—illegally possessed by Arvle Edgar Medlin, and/or stolen firearms, records of the purchase or sale of such firearms by Medlin, which are fruits, evidence and instrumentalities of violation of Title 18, United States Code, Sections 922(h)(1); 922(a)(1); 922(j) and 924(a)." The search warrant issued by a United States magistrate to agents of the Bureau of Alcohol, Tobacco and Firearms (ATF) was supported by an affidavit of ATF Agent Samuel N. Evans.

At the evidentiary hearing on remand, the testimony was that the information which led to the issuance of the federal search warrant was provided by a confidential informant to Tulsa County Deputy Sheriff Don Carter. The informant had on a previous occasion told Carter that stolen property other than firearms might be found at Medlin's residence in Skiatook. Apparently, Carter was interested in pursuing the "tip" provided by the informant but did not seek a search warrant based upon the "tip" because of his poor working relationship with officials of neighboring Osage County where Medlin's residence was located. Because Medlin's possession of stolen firearms would be evidence of a federal crime, Carter passed along the informant's information to ATF agents.

The search warrant was executed by three ATF agents who were accompanied by one or two officers of the town police department and Deputy Sheriff Carter. Upon entering the Medlin residence the ATF agents identified themselves to Medlin, his wife and son and told them that they had a federal warrant authorizing the seizure of firearms. Thereafter, the ATF agents searched the Medlin residence and seized approximately 130 firearms. While

the ATF agents searched for evidence of federal firearms offenses, Deputy Carter combed Medlin's residence for suspected stolen property which he believed to be evidence of state offenses. By the time the search was concluded Deputy Carter had seized some 667 items of property none of which were identified in the warrant authorizing the search. The ATF agents loaded the seized firearms into a horse trailer that had been provided by the Tulsa County Sheriff's Department at Carter's behest. When the ATF agents had completed their search they assisted Carter, the town police officers, and another Tulsa County officer who arrived during the execution of the search at Carter's invitation in loading the additional 667 seized items into the same horse trailer.

Before trial on the federal firearms offenses, Medlin moved to suppress the seized firearms on the basis that the warrant authorizing the search of his residence was invalid. The trial court denied the motion to suppress and we affirmed that decision in *Medlin I*, holding that the officer's reliance upon the search warrant was objectively reasonable. However, we there noted that the *execution* of the warrant, as opposed to the warrant itself, may have been constitutionally defective. We wrote: "Because of the large number of seized items not listed in the warrant, it is possible the police used this warrant as a pretext for a general search, which would taint the whole search." 798 F.2d at 411. Accordingly, we remanded the case to the district court for an evidentiary hearing in which the trial judge was to determine whether any illegality attended the search and if so, "whether the improper conduct was so flagrant that exclusion of *all* the seized evidence is warranted." 798 F.2d at 411 (emphasis in original). The trial court did in fact suppress *all* the evidence seized in the search and this appeal ensued.

The nature of the cooperation between federal and local law enforcement officials in the execution of a federal search warrant is the basic issue in this appeal. The Supreme Court has held that "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant...." *Dalia v. United States*, 441 U.S. 238, 257, 99 S.Ct. 1682, 1693, 60 L.Ed.2d 177. The Fifth, Eighth, and Ninth Circuits have held that cooperation between federal and state law enforcement agencies in the execution of a search is not impermissible per se. *United States v. Wright*, 667 F.2d 793, 797 (9th Cir.); *United States v. Evans*, 572 F.2d 455, 487 (5th Cir.); *United States v. Cox*, 462 F.2d 1293, 1306 (8th Cir.). These decisions comport with 18 U.S.C. § 3105, which provides in part that

"[a] search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution."

At the hearing on remand, the testimony established that ATF agents routinely take along local police officers when executing search warrants. Since the local officers are acting "in aid of" the ATF agents in executing the search, such a practice is within the prerogative of ATF agents, has been condoned by the courts, and is permitted by statute. At the hearing, ATF Agent Evans testified as follows:

"Q: And when you are in charge of executing a search warrant and you have deputies from other law enforcement agencies, are they subservient, subject to your orders?

"A: Yes, sir."

This testimony establishes that the local police officers were acting under federal authority and were subject to federal control when they were present at the search pursuant to the warrant issued to the ATF agents.

18 U.S.C. § 3105 does not require that a person assisting an officer in the execution of a warrant be an officer acting within his or her jurisdiction. Consequently, we find that there was nothing impermissible in Deputy Carter's presence at the Medlin search. We remain mindful, however, that Deputy Carter was on the Medlin

premises merely to assist the ATF agents in the execution of their warrant and that his authority to search was derived from, and was no greater than, the authority extended to the ATF agents.

■ Notwithstanding the fact that Deputy Carter was technically assisting the ATF agents in the execution of the federal search warrant, the Government argues that two independent searches were conducted at the same time of the Medlin residence—one by the ATF agents for their purposes and one by Deputy Carter for his own purposes. While we certainly agree that two very diverse investigations were pursued at the Medlin residence on that day we cannot conclude that there was more than one search. The ATF agents, Deputy Carter and the others gained entry into the Medlin residence under the search warrant authorizing the seizure of the stolen firearms. There is no evidence in the record which indicates that Deputy Carter would have been allowed into the Medlin home if he had not been accompanying ATF agents armed with the warrant or that Medlin had a belief that he could have excluded Deputy Carter from his home if he so chose. Indeed, Medlin *could not* have denied entry to Deputy Carter since he was aiding in the execution of a search authorized by a federal magistrate. The fact that the ATF agents set to their task of looking for firearms while Deputy Carter undertook a wholly distinct task does not convert a single entry and search into multiple searches.

Moreover, we cannot help but note that the record contains suggestions that the ATF agents participated in Deputy Carter's activities at the Medlin residence. The ATF agents knew that Carter's informant had told him that there were firearms and stolen property on the premises. The facts that the transportation of all the seized items was prearranged by Deputy Carter, apparently upon agreement with the ATF agents, and that the ATF agents assisted Deputy Carter in loading the 667 unauthorized items into the horse trailer are troubling in that they show that the ATF agents were, at the very least, passive participants in an unauthorized activity which Deputy Carter had planned when he accompanied the ATF agents on their authorized search for firearms. This record shows that the ATF agents and Deputy Carter were aiding *each other* in their investigations in the guise of a search authorized by a federal warrant.

Deputy Carter was lawfully on the premises of the Medlin residence when he seized the 667 items of suspected stolen property. What is in issue is the lawfulness of Deputy Carter's seizure of those items. "A well-settled tenet of Fourth Amendment jurisprudence is that searches conducted without a warrant and probable cause are per se unreasonable, subject only to a few exceptions." *United States v. Gay*, 774 F.2d 368, 376 (10th Cir.). Since the 667 items were not seized pursuant to a warrant, they could only have been permissibly seized under one of the narrow exceptions to the Fourth Amendment's warrant requirement.

The Government contends that the 667 items were seized by Deputy Carter with Medlin's consent. Whether a consent was "voluntary or was the product of duress or coercion, express or implied, is to be determined by the totality of all the circumstances ... and is a matter which the Government has the burden of proving." *United States v. Mendenhall*, 446 U.S. 544, 557, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (citation omitted). In *United States v. Recalde*, 761 F.2d 1448, 1453 (10th Cir.), we set forth a test as to whether the Government has successfully carried its burden of showing that an alleged consent to search was in fact voluntary:

"First, there must be clear and positive testimony that the consent was unequivocal and specific. Second, the Government must establish that the consent was given without duress or coercion. Finally, we evaluate those first two standards with the traditional indulgence of the courts against a presumption of waiver of constitutional rights."

■ The Government argues that the foregoing test is only applicable when property seized pursuant to an asserted consent

is sought to be introduced as evidence at trial. We disagree. The nature of a Fourth Amendment right is not so limited. An individual's right to be secure in his or her person and effects is guaranteed by the Fourth Amendment whether or not the fruits of a constitutionally invalid search have evidentiary value in a resulting criminal prosecution. Consequently, whether Medlin consented to the warrantless seizure of the 667 items in derogation of his Fourth Amendment rights is properly gauged by the standard we recognized in *Recalde* even though the Government claims that it did not plan to introduce the 667 items into evidence in this prosecution.

The consent issue was covered in the hearing by the trial court and it found that no consent had been given. In *United States v. Obregon*, 748 F.2d 1371, 1376 (10th Cir.), we said: "Upon review of this issue, we must view the evidence in the light most favorable to the district court's determination." Based upon the evidence adduced at the hearing, the trial court said that it could not find that "there is clear and positive testimony that the consent to seize items beyond the scope of the warrant was unequivocal and specific."

■ The Government's evidence of Medlin's consent was that he had told Deputy Carter numerous times, as Deputy Carter examined Medlin's house for suspected stolen property, "if you think it is stolen, take it." We will not second-guess the district court which determined, through an evaluation of the testimony of the various witnesses at the hearing, that such a statement was not so unequivocal or specific as to support a waiver of Fourth Amendment rights.

Perhaps more importantly, the trial court found that "the circumstances of the search were inherently coercive." The facts here presented are similar to those in *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, where state officers announced to a homeowner that they had a warrant to search her home. However, they did not produce the warrant to the homeowner at the time of the ensuing search or during the course of subsequent litigation in which the evidence seized during the search was sought to be suppressed. The Court held that the homeowner's statement to the officers to "come on in and go ahead and search" did not constitute a valid consent to search under such circumstances. The Court said:

"When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent."

391 U.S. at 550, 88 S.Ct. at 1792.

The circumstances attending Deputy Carter's search of Medlin's home were even more coercive than those which obtained in *Bumper*. Carter, as mentioned, entered the Medlin residence only under the federal warrant. The trial judge noted that the officers had their guns drawn when they gained entry into the residence. As a layperson, under such extreme conditions, Medlin could hardly be expected to distinguish between that part of the search which was authorized by warrant, and for which his consent was unnecessary, and that part of the search which was unauthorized. As noted above, it seems reasonable that Medlin would have believed when faced by federal and state officers with guns drawn that he had no right to resist Deputy Carter's investigation of state law offenses and the property seizure. Accordingly, we find that the trial court did not err in concluding that the Government failed to carry its burden of proving Medlin's consent to the seizure of the 667 items.

We must conclude that Medlin's Fourth Amendment rights were violated by the seizure and removal of the items of suspected stolen property.

In *Medlin I* we cited the cases of *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31, *United States v. Crozier*, 777 F.2d 1376 (9th Cir.), *Marvin v. United States*, 732 F.2d 669 (8th Cir.), *United States v. Tamura*, 694 F.2d 591 (9th Cir.), *United States v. Wuagneux*, 683 F.2d 1343

(11th Cir.), *United States v. Heldt,* 668 F.2d 1238 (D.C. Cir.), and *United States v. Rettig,* 589 F.2d 418 (9th Cir.), as authority for the proposition that even evidence which is properly seized pursuant to a warrant must be suppressed if the officers executing the warrant exhibit "flagrant disregard" for its terms. Upon our remand the district court found that the warrant issued to the ATF agents in the instant case was executed with flagrant disregard for its terms and suppressed all the evidence seized including the firearms which were particularly named in the warrant.

The basis of those decisions which hold that blanket exclusion is appropriate when a search warrant is executed with "flagrant disregard" for its terms is found in our traditional repugnance to "general searches" which were conducted in the colonies pursuant to writs of assistance. To protect against such invasive and arbitrary searches, the Fourth Amendment mandates that search warrants "particularly describ[e] the place to be searched and the persons or things to be seized." As the Supreme Court stated in *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231:

> "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

■ When law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant.

■ The Government contends that this case is distinguishable from other cases in which the blanket exclusion rule has been used. The primary distinctions proffered are that in such cases the officers who exceeded the terms of the warrant were the officers to whom the search warrants were issued or that the improperly seized property was expected to be helpful in the prosecution in aid of which the search warrant was issued. We do not see why these distinctions should in any way insulate the Government from the rule of blanket exclusion in flagrant disregard cases, especially in a case like this where the officer who seized property not described in the warrant participated in the search as an assistant to and under the direction of the authorized federal officers.

The Government urges that of those cases which we cited in *Medlin I,* the rule of blanket exclusion was not expressed in all of them and in some the courts found that the excessive seizures were attributable to "practical considerations" in the execution of the warrants or that the officers attempted to minimize the intrusiveness of their authorized searches, or that the seizure of items not described in the warrant was pursuant to the plain view doctrine.

However, in the instant case, the district court judge found that the seizure of the 667 items was "not mitigated by practical considerations" and that Deputy Carter "employed the execution of the federal search warrant as a 'fishing expedition.'" We cannot say that these factual findings are clearly erroneous. We note as well that the Government has not here relied on plain view.

■ The Government further argues that the ATF agents acted with objective reasonableness in conducting the search for firearms and therefore there is no deterrent effect to be applied. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677. The Government overlooks the fact that the objective reasonableness exception to the exclusionary rule set forth in *Leon* is available only in those cases in which the officers act objectively reasonable in executing a search warrant which is subsequently found to be invalid. The Court wrote in *Leon* of the exception that it

> "assumes, of course, that the officers properly executed the warrant and searched only those places and for those

objects that it was reasonable to believe were covered by the warrant." 468 U.S. at 918 n. 19, 104 S.Ct. at 3418 n. 19. The inquiry on this appeal does not contain an issue relating to the validity of the warrant itself.

Furthermore, as we have noted above, there is no basis for the distinctions which the Government here attempts to develop to create "two searches." Having chosen Deputy Carter to aid them in the execution of their warrant, and being able to supervise him, the federal officers remain accountable for Carter's conduct while acting under the authority of the entry and warrant.

The Government finally argues that a blanket exclusion here would have no deterrent effect since there would not have been much the agents could have done to prevent the violation of Medlin's Fourth Amendment rights. Again, we must disagree. The ATF agents could have decided not to bring Deputy Carter along as an assistant on their search, but having exercised their prerogative to do so the ATF agents could have, and should have, monitored Carter's activities to ensure that the federal search was not tainted by an unrelated "fishing expedition." Again, it must be mentioned that the ATF agents assisted Carter in the removal of items he seized from the house and in loading them in the horse trailer. Unfortunately, the ATF agents' failure to prevent the flagrant disregard for the terms of their search warrant, a failure for which they are accountable, renders all the fruits of the firearms search inadmissible in evidence against Medlin.

We affirm the trial court's order suppressing the firearms seized in the search of the Medlin residence.

IT IS SO ORDERED.