MURPHY, Circuit Judge.
Albert Foster, Jr., was charged in a twelve-count superseding indictment with various violations of Titles 18 and 21 of the United States Code. Each charge was based on evidence seized during a warrant-based search of Foster’s home. In addition to seizing those limited items specifically listed in the search warrant, the officers seized a large number of unlisted items.
Foster brought a motion to suppress all property seized during the search, including the items listed in the warrant. Following a suppression hearing, the Honorable Frank H. Seay of the United States District Court for the Eastern District of Oklahoma found that the officers had exhibited flagrant disregard for the terms of the warrant by conducting a “wholesale seizure of Foster’s property amounting to a fishing expedition for the discovery of incriminating evidence.” Accordingly, pursuant to this court’s decision in United States v. Medlin, 842 F.2d 1194 (10th Cir.1988) (“Medlin II”), the district court ordered the blanket suppression of all evidence seized from Foster’s residence, including those items specifically covered by the search warrant. The United States appeals the district court’s order of blanket *848 suppression. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and affirms.
I. BACKGROUND
The facts, as found by the district court, are as follows. On December 16, 1994, Se-quoyah County Deputy Sheriff Raymond Martin submitted an affidavit for a warrant to search Foster’s residence. According to Martin, an arrestee informed him that Foster’s residence was being used for a marijuana cultivation operation and to house illegal weapons. Based on the information contained in Martin’s affidavit, a state judge issued a search warrant authorizing a search of Foster’s home, automobiles, and any outbuildings located on Foster’s property. The search warrant authorized a search of Foster’s residence for the presence of .marijuana and the following specific items:
Remington 12 Ga. shotgun serial #L072083, Taurus Model 85, 38 special Serial # NA44497, 22Ca. Ruger carbine # 120-99025 and a 22 Caliber Ruger Carbine W/green folding stock # 23820424.
On December 16, 1994, at approximately 3:25 p.m., Martin and seven other officers arrived at Foster’s residence and began to execute the search warrant. The officers found marijuana in the bedroom of the residence and in a barn located directly behind the residence. The officers also found firearms, ammunition, and drug paraphernalia throughout the residence and the bam. During the first hour of the search, Foster arrived at the residence with a woman identified as his stepdaughter. ■ Foster was immediately arrested on charges of cultivation of marijuana and transported to the county jail.
After Foster’s arrest, state officers decided to contact the Dmg Enforcement Agency (“DEA”) for assistance. Although the DEA authorized a federal investigation and prosecution, DEA agents did not arrive at Foster’s residence until approximately 5:45 p.m.
In the interim, the state officers continued to search Foster’s residence. Sequoyah County Deputy Sheriff Ken Cowart found numerous videotapes in the living room of the residence. Cowart noticed the words “Coke” and “Tab” on several of the videotapes. Apparently believing that these terms might refer to illegal drugs, Cowart placed one of the tapes in Foster’s VCR. Viewing the videotape, Cowart observed Foster and his stepdaughter lying on the couch in the living room of Foster’s residence. Co-wart and Greg Wilson, an investigator with the Sequoyah County District Attorney’s Office, found and viewed approximately five other videotapes with either the word “Coke” or “Tab” on the labels. These videotapes contained footage of sexual acts involving Foster and his stepdaughter and footage of marijuana use, including one scene involving three or four young females smoking marijuana on the couch in Foster’s living room.
At approximately 5:45 p.m., DEA agents Robert Shannon, Juan Beal, and Tim Jones arrived at Foster’s residence. Shannon read the search warrant and Martin’s supporting affidavit and then accompanied Wilson on a tour of the residence. The DEA agents viewed the evidence that the state officers had already discovered, watched a videotape of the crime scene made by Wilson, and conducted their own search of the premises. Without personally viewing any of the videotapes, Shannon seized all videotapes located in Foster’s residence and took them to the DEA’s office.
The search of Foster’s residence lasted from 3:25 p.m. until approximately 11:00 p.m. Although the warrant specifically identified the items to be seized, four weapons and marijuana, when the DEA agents left the residence they took thirty-five items “including various firearms, ammunition, videotapes, marijuana, drug paraphernalia, and other miscellaneous items.” Dist. Ct. Order at 4. For their part, the state officers seized anything of value in- the house.[1] See id. at 8-9.
*849 Foster was charged in a twelve-count superseding indictment with various violations of the United States Code. Foster moved to suppress all property seized during the search because the search “substantially exceeded the scope of the warrant and there was flagrant disregard for the terms of the warrant as to the property to be seized.” The district court agreed. Relying on this court’s opinion in Medlin II,. the district court determined that blanket suppression of all evidence seized was warranted because the state officers had exhibited flagrant disregard for the terms of the warrant by “conducting a wholesale seizure of Foster’s property amounting to a fishing expedition for the discovery of incriminating evidence.” The district court further found that the officers seized anything of value from Foster’s home. The sole issue on appeal is whether the district court properly ordered the suppression of items specifically listed in the warrant based upon the officers’ undisputed seizure of “anything of value” from Foster’s residence.
II. ANALYSIS
When reviewing an order granting a motion to suppress, this court accepts the trial court’s factual findings unless clearly erroneous, and views the evidence in the light most favorable to the district court’s finding. United States v. Little, 18 F.3d 1499, 1503 (10th Cir.1994) (en banc). Moreover, at a hearing on a motion to suppress, “the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge.” United States v. Fernandez, 18 F.3d 874, 876 (10th Cir.1994). Nevertheless, we review de novo the ultimate determination of the reasonableness of a search under the Fourth Amendment. United States v. Callwood, 66 F.3d 1110, 1112 (10th Cir.1995).
Under the law of this circuit, “even evidence which is properly seized pursuant to a warrant must be suppressed if the officers executing the warrant exhibit ‘flagrant disregard’ for its terms.” Medlin II, 842 F.2d at 1199 (emphasis added). The basis for blanket suppression when a search warrant is executed with flagrant disregard for its terms “is found in our traditional repugnance to ‘general searches’ which were conducted in the colonies pursuant to writs of assistance.” Id.[2] To protect against invasive and arbitrary general searches, the Fourth Amendment mandates that search warrants “particularly describ[e] the place to be searched and the persons or things to be seized.” U.S. Const, amend. IV. As the Supreme Court stated in Matron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927),
[t]he requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.[3]
Therefore, Medlin II establishes that “[w]hen law enforcement officers grossly exceed the scope of a search warrant in seizing *850 property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant.” 842 F.2d at 1199 (emphasis added).
With that background in mind, the district court made the following factual findings in determining that the officers acted in flagrant disregard for the terms of the warrant:
The specific terms of the warrant listed four firearms and marijuana as the items to be seized. It is undisputed that items were taken from Foster’s residence which did not fall within the terms of the warrant. While it is true that a limited number of items listed in the sheriffs return can be classified as contraband or other incriminating evidence inadvertently found during the execution of the warrant, it is abundantly clear from the testimony of Martin, as well as the testimony of Wilson and Cowart, that there was a wholesale seizure of Foster’s property amounting to a fishing expedition for the discovery of incriminating evidence. In fact, upon cross-examination by defense counsel, Martin admitted that the officers “took anything of value” and that this was standard procedure in the execution of a Se-quoyah County search warrant. Other than the readily observable firearms, marijuana, and assorted contraband (primarily listed on page three of the sheriffs return), no attempt was made to substantiate a connection between the seizure of the majority of the seized items and the terms of the warrant. As candidly admitted by Martin, the officers simply “took anything of value” and did not adhere to the specific terms of the warrant.
Dist. Ct. Order at 8-9 (emphasis added). In light of these factual findings, the district court concluded that the execution of the warrant was constitutionally defective. In fact, Judge Seay concluded that he could not “imagine a more pronounced case of a search warrant execution conducted in flagrant disregard for its terms.” Id. at 10.
The district court’s findings of fact are amply supported in the record and are not clearly erroneous. See O’Connor v. R.F. Lafferty & Co., 965 F.2d 893, 901 (10th Cir.1992) (holding that this court will only set aside district court’s factual findings when they are clearly erroneous). Accordingly, it is with these facts in mind that this court must determine whether the execution of the search warrant was reasonable under the Fourth Amendment. See Callwood, 66 F.3d at 1112 (holding that this court should review de novo ultimate determination of reasonableness of search under Fourth Amendment).
It is beyond dispute, based on the facts as found by the district court, that the officers in this case both viewed the warrant issued by the state judge as a general warrant and executed the warrant in accord with those views. Officer Martin’s testimony at the suppression hearing could not be more clear. He candidly admitted that when officers in Sequoyah County executed search warrants for marijuana and guns, they routinely searched all items with serial numbers in the house to determine if they were stolen.[4] After he was unable to explain why the officers had seized the BB gun, drill, TVs, lawnmower, coveralls, socket set, clock radio, coins, knives, jewelry, etc., Martin admitted that the officers had simply seized anything of value in Foster’s house.[5] Furthermore, Martin admitted that this was the standard practice in Sequoyah County, that the officers in the county had been conducting searches this way for as long as he could *851 remember, and that they did so in an effort to turn up evidence of additional crimes.[6]
In light of these facts, this court must conclude that Foster’s Fourth Amendment rights were violated by the seizure and removal of “anything of value” from his home. Furthermore, it is abundantly clear that the officers’ disregard for the terms of the warrant was a deliberate and flagrant action taken in an effort to uncover evidence of additional wrongdoing.[7] Because the officers here flagrantly disregarded the terms of the warrant in seizing property, “the particularity requirement is undermined and [the otherwise] valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant.” Medlin II, 842 F.2d at 1199.
The dissent asserts that the remedy of blanket suppression is only appropriate when the officers conducting the search had an improper ulterior motive in both obtaining and executing the warrant. Dissenting Op. at 856-67. While the dissent’s approach may be compelling if we were drafting on a clean slate, that approach is clearly foreclosed by this court’s decision in Medlinll.
The evil that this circuit addressed in Medlin II was the use of an otherwise valid warrant to conduct a general search. With this particular evil in mind, the court held that blanket suppression was mandated when a warrant was executed in flagrant disregard for- its terms. Moreover, it is clear from the face of the opinion that the court was focusing on the actual execution of the warrant rather than the mental state of the officers at the time they obtained the warrant. Medlin II, 842 F.2d at 1196, 1199.[8] We find nothing in Medlin II requiring that a warrant be obtained in bad faith or upon a ruse before the remedy of blanket suppression is appropriate. This Circuit has spoken to the issue and has determined that blanket suppression is mandated when the executing officers flagrantly disregard the particular terms of the warrant. We are bound to apply that rule of law. See In re Smith, 10 F.3d 723, 724 (10th Cir.1993) (holding that three-judge panel cannot disregard or overrule circuit precedent), cert. denied, — U.S. -, 115 S.Ct. 53, 130 L.Ed.2d 13 (1994).
Even under the dissent’s reading of Med-lin II, the remedy of blanket suppression is *852 appropriate given the particularly egregious actions of the officers here. As discussed above, the dissent contends that blanket suppression is only appropriate when the officers . act improperly in both obtaining and executing the warrant. According to the dissent, because the officers here did not obtain the warrant on a ruse, blanket suppression is inappropriate. The dissent’s premise is belied by the record and the findings of the district court.
The district court specifically found that when the officers conducted a general search and seizure of Foster’s home, they were acting in accord with the “standard procedure in the execution of a Sequoyah County search warrant.” According to Martin’s testimony, this “standard procedure” entailed a “fishing expedition” for evidence of additional crimes every time a search warrant was executed. Martin was surely aware of this standard procedure when he applied for the search warrant in this case. Therefore, at the time he obtained the warrant, Martin, well aware of Sequoyah County “standard procedure,” knew that the limits of the warrant would not be honored. He also necessarily realized that the warrant would be used to conduct a general search and seizure of Foster’s property. In light of the district court’s undisputed findings of fact, it is readily apparent that the officers obtained the warrant for a dual purpose: (1) a disclosed and legitimate search for illegal weapons and drugs in Foster’s home; and (2) an undisclosed and improper “fishing expedition” for evidence of additional crimes. Thus, even under the dissent’s reading of Medlin II, it appears that blanket suppression is the appropriate remedy.
In reaching this conclusion, we agree with the dissent that the extreme remedy of blanket suppression should only be imposed in the most “extraordinary” of cases. This case is one of those exceedingly rare cases. It is for that reason that the dearth of appellate cases authorizing blanket suppression is neither surprising nor revealing. Given the testimony and conduct of the state officers in this case, the district court stated that it could not “imagine a more pronounced case of a search warrant execution conducted in flagrant disregard for its terms.” Dist. Ct. Order at 10. In light of the particularly disturbing testimony of officer Martin that it is standard procedure in Sequoyah County to ignore the particularity requirement of search warrants and to seize anything of value,[9] we agree with the district court’s assessment.
The United States urges this court to reject the remedy of blanket suppression because the DEA agents, as opposed to the officers of the Sequoyah County Sheriff’s Office, acted with objective reasonableness in conducting their search. See United States v. Leon, 468 U.S. 897, 908-13,104 S.Ct. 3405, 3412-15, 82 L.Ed.2d 677 (1984). The foundation of this argument is that the search of the DEA agents was somehow separate from and independent of the search of the sheriffs officers. The Government’s argument is unavailing. The district court specifically found that the search by the DEA was part and parcel of the search by the state officers and that one search occurred, not two. Dist. Ct. Order at 10-11. The record more than adequately supports this finding. Officer Martin testified at the suppression hearing that this was his search and that he was in charge. Furthermore, Martin testified that there was only one search. In light of Martin’s testimony, the district court’s finding that only one search occurred is not clearly erroneous. Little, 18 F.3d at 1503.
Although it was the sheriffs officers that acted in bad faith and flagrant disregard *853 for the warrant, the DEA agents in this case acted under the authority of the state warrant at the request of the sheriff’s officers. Dist Ct. Order at 11 (“The record establishes that the DEA agents were contacted by the state officers in order to assist in an investigation initiated by state officers. In sum, the state officers and the DEA agents were aiding each other in their investigation conducted under the authority of a single search warrant.”) It is absolutely clear that the DEA agents had no independent authority to conduct the search. In light of these circumstances, any claim that the DEA agent’s “good faith” somehow insulates them from the actions of the state officers rings hollow. See Medlin II, 842 F.2d at 1199-1200. The sole search here was a general search conducted in flagrant disregard for the terms of the warrant. All evidence seized pursuant to that general search is inadmissible in evidence against Foster.
III. CONCLUSION
For all of the reasons set out above, the judgment of the United States District Court for the Eastern District of Oklahoma is hereby AFFIRMED.

. The state officers seized the following items: several VCR machines, miscellaneous video equipment, a socket set, two bows and a sheath containing six arrows, a pair of green coveralls, a riding lawn mower, three garden tillers,- a brown leather po.uch containing miscellaneous gun shells, a holster, several stereo systems, a CB radio base station, two soft tip microphones, several televisions with remote controls, a De-walt heavy duty drill, a Vivitar camera tripod, a *849 Red Rider BB-gun Daisy Model, a Corona Machete in brown leather case, an ASAHI Pentex SpotMatic Camera, a Bowie type knife in black sheath, a Yashica camera MAT-124, a black leather bag with tapes, a metal rod, a Westinghouse clock radio, five hunting knives, a box of pellets, a screw driver set, three vehicles, and a small box containing old coins, knives, watch, and jewelry.

. In Marron v. United States, 275 U.S. 192, 195, 48 S.Ct. 74, 75, 72 L.Ed. 231 (1927), the Supreme Court, quoting James Otis, stated that general searches pursuant to writs of assistance were " ‘the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was found in an English law book,' since they placed 'the liberty of every man in the hands of every petty officer.'"

. In Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), the Supreme Court noted that the Fourth Amendment's particularity requirement served to insure "that those searches deemed necessary [by a magistrate] should be as limited as possible.” According to the Court, "the specific evil is the ‘general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belonging's. The warrant accomplishes this [] objective by requiring a 'particular description' of the things to be seized." Id. (citations omitted).

. Martin’s testimony was as follows:
COUNSEL: Would it be a fair statement, Deputy Martin, that when you all have a search warrant for marijuana and guns, that you look at all items in the house for the investigation, to look at the serial numbers to see if they are stolen; would that be a fair statement?
MARTIN: Yes, sir.
COUNSEL: And you look at anything that has got a serial number or something. And whether that's what you're looking for or not, you look at everything?
MARTIN: Yes sir.

. Martin testified as follows:
COUNSEL: Would it be a fair statement that anything of value in that house was taken?
MARTIN: Yes, sir.

. Martin testified as follows:
COUNSEL: Okay. Would it be a fair statement that this was your search?
MARTIN: Yes, sir.
COUNSEL: And you were kind of in charge?
MARTIN: Kind of.
COUNSEL: And would it be a fair statement that as long as you have been a deputy in Sequo-yah County that when you all do a search that this is the way in which it's conducted?
MARTIN: Yes, sir.
COUNSEL: You go in and look for everything that's there, for any leads or anything that might lead to something being stolen, or whatever?
MARTIN: Yes, sir.
COUNSEL: What did you all do with the stuff? Did you run checks to put them all in the computer to see if anything was hot?
MARTIN: Yes, sir.
COUNSEL: Anything else that you did with any of these items? I mean was that the reason for the wait was just to check it all out and see what might be stolen and what might not?
MARTIN: Yes, sir.

. Judge Seay’s finding that the officers engaged in a "fishing expedition” for evidence of additional crimes is identical to the finding of the district court under review in Medlin II. 842 F.2d at 1199. In light of that finding, the Medlin II court held that blanket suppression was appropriate and necessaiy. Id. The same is true here.

.The Medlin II court consistently and repeatedly focused on the execution of the warrant in deciding whether the remedy of blanket suppression was mandated. 842 F.2d at 1199 ("[E]ven evidence which is properly seized pursuant to a warrant must be suppressed if the officers executing the warrant exhibit 'flagrant disregard' for its terms.” (emphasis added)); id. ("The basis of those decisions which hold that blanket exclusion is appropriate when a search warrant is executed with ‘flagrant disregard' for its terms is found in our traditional repugnance to ‘general searches' ....” (emphasis added)); id. (“When law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant.” (emphasis added)); id. at 1196 (“The trial court denied the motion to suppress and we affirmed that decision in Medlin I, holding that the officer’s reliance upon the search warrant was objectively reasonable. However, we there noted that the execution of the warrant, as opposed to the warrant itself, may have been constitutionally defective.” (emphasis added)).

. It is this testimony in particular which distinguishes this case from those cases cited by the dissent. See, e.g., United States v. Matias, 836 F.2d 744, 748 (2d Cir.1988) (blanket suppression inappropriate because "the documents and photographs that are the foundation for the claim of an unconstitutional wholesale search were properly seized under the authority of the warrant"); United States v. Tamura, 694 F.2d 591, 597 (9th Cir.1982) (blanket suppression inappropriate where government's ' “wholesale seizures were motivated by considerations of practicality rather than by a desire to engage in indiscriminate 'fishing’ ”); United States v. Heldt, 668 F.2d 1238, 1269 (D.C.Cir.1981) (blanket suppression inappropriate where officers made "good faith attempt to stay within the boundaries of an inherently broad warrant"), cert. denied sub nom., Hubbard v. United States, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).