FILED
United States Court of Appeals
Tenth Circuit

**March 22, 2011**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SCOTT EDWARD ALLEN,

    Defendant-Appellant.

No. 10-6170
(D.C. No. 5:09-CR-00277-D-1)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES** and **McKAY**, Circuit Judges, **PORFILIO**, Senior
Circuit Judge.

---

A jury convicted Scott Edward Allen on one count of being a felon in

possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Allen appeals

the district court's denial of his pretrial motion to suppress evidence and its

refusal to instruct the jury that, in order to convict him, it had to find that the

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

firearms he possessed had a substantial effect on interstate or foreign commerce. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  Background

On July 22, 2009, officers of the Ponca City, Oklahoma, Police Department executed a search warrant at Mr. Allen's residence.  The warrant was based on a showing of probable cause to believe that evidence of Mr. Allen's unlawful possession of a firearm after a former conviction would be found at his house. The showing of probable cause was set out in an affidavit executed by Sergeant Jerry Hall.  The affidavit was based on information Sergeant Hall received from his captain, Earl Watkins, who provided him with information from other officers who had responded to a call at Mr. Allen's house around 2:00 or 3:00 a.m. Sergeant Hall also based his affidavit on information he received from another officer who had responded to a call later that morning at Mr. Allen's neighbor's house.  In the affidavit, Sergeant Hall stated that on July 22, "at approximately 2:00 a.m. Ponca City Police Officers responded to" Mr. Allen's house, and at the time of the call, they "witnessed [Mr.] Allen holding a shotgun while standing on the front porch."  R., Vol. 1 at 18.  Sergeant Hall further related that earlier that evening, there were several calls complaining that Mr. Allen was "yelling, throwing fireworks from his residence and acting belligerent and erratic.  When Officers arrived Mr. Allen came out on the front porch wielding a shotgun.  When officers announced their presence Mr. Allen went back into his residence." *Id.*

Sergeant Hall also stated that "[a]t approximately 8:00 a.m. Mr. Allen verbally threatened to shoot out his neighbor[']s house windows. Mr. Allen then proceeded to the neighbor's house and physically assaulted him causing injury." *Id.* He further noted that, while taking a report from the neighbor, officers discovered that Mr. Allen had "two felony convictions" and an outstanding misdemeanor warrant. *Id.*

The affidavit and the warrant were dated July 22, 2009, at 2:05 p.m. The warrant described the property to be seized as "Firearms/Weapons," "Ammunition," and "also . . . any equipment or ammunition and any records that reflect dominion and control." *Id.* at 16. The property seized during the search was listed in the Officer's Return:

1. Clear plastic baggie containing green leafy substance (marijuana)
2. Small cellophane bag containing white powdery substance
3. Small unlabeled medicine bottle full of marijuana seeds
4. Small square baking pan (storage for drug paraphernalia)
5. 3 packages of rolling papers
6. 2 multi-colored glass marijuana pipes
7. 1 set of hemostats
8. 2 small metal screw top canisters
9. 1 small metal screw top marijuana pipe[]
10. 2 small metal one hitter marijuana pipes
11. 1 small metal bowl from a marijuana pipe
12. 2 marijuana grinders
13. 1 small plastic baggie containing 3 marijuana pipe screens
14. 1 small piece of straightened paper clip
15. 1 small plastic tray
16. 2 disposable cameras
17. 1 small black nylon handgun holster (contained a loaded .40 cal magazine with 13 live hollow point bullets)
18. 1 DHS mail to Scott Edward Allen at [REDACTED] PC Ok

19. 1 copy of Bill of Rights
20. 8 Pieces of paper with hand written 10 codes copied on them
21. 1 black ledger
22. 3 spiral notebooks containing Officers names, badge numbers, home addresses, home phone numbers[]
23. 1 Uniden Bearcat brand scanner
24. 1 small plastic tackle box containing assorted lock box keys and 27 assorted calibers of live bullets
25. 1 Uniden "NASCAR" portable scanner with batteries (working order)
26. 1 [p]iece of aluminum foil with a spoon and used syringe (syringe destroyed)
27. 1 spent S&W .40 cal casing (front yard)
28. 1 Smith and Wesson .40 caliber semi-auto handgun Serial Number PBT4685 with 16 live hollowpoint bullets in magazine[]
29. 1 set of manual postal scales
30. 1 small black box with 23 1ive .40 cal bullets
31. 17 live 20 gauge shotgun rounds
32. 2 military Kevlar helmets
33. 1 [m]ilitary Kevlar body armor vest
34. 1 Daisy "Power line" BB rifle with scope
35. Green military ammunition box containing the following: 1 green capped bottle containing 36 .4[0] caliber hollow point live rounds, 1 plastic container of Daisy BB's, 1 red capped plastic container with numerous live .22 cal bullets, 87 live 9mm caliber bullets in a white Winchester box, 17 live [.]40 caliber rounds in a green box, 13 live 20 gauge rounds in a black box, 50 live .40 caliber rounds and a white Winchester box, 35 live .38 caliber rounds in yellow box
36. 1 Springfield 20 gauge pump shotgun (No serial number)

*Id.* at 19-20.

In the district court, Mr. Allen argued that certain statements in Sergeant Hall's affidavit were intentionally or recklessly false, which entitled him, under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), to a hearing and the suppression of all evidence seized. He also claimed that, in seizing items

numbered 1-16, 18-26, 29, and 32-34 in the Officer's Return, the officers grossly exceeded the scope of the warrant, which required blanket suppression under relevant case law.

The district court held a *Franks* hearing. Mr. Allen presented written statements of the two officers who responded at 2:00 or 3:00 a.m. and of the neighbor he allegedly assaulted, which were not available to Sergeant Hall when he completed his affidavit. Mr. Allen argued that there were inconsistencies between the written statements and the affidavit that materially affected probable cause. Sergeant Hall, who conducted the search, also testified at the hearing.

In a written order, the district court denied the motion. The court first concluded that uncontradicted and uncontested statements in the affidavit were sufficient to establish probable cause: that officers observed Mr. Allen with a gun, that Mr. Allen had prior felony convictions, that the house was Mr. Allen's residence, and that Mr. Allen retreated into the house with the gun. The court further found no *Franks* violation because there was no evidence that Sergeant Hall had deliberately or recklessly made any of the statements in his affidavit that were inconsistent with the written narrative reports the responding officers and the victim later completed. Moreover, the court concluded that a number of the inconsistent statements were immaterial to a finding of probable cause. As to Mr. Allen's argument that the officers grossly exceeded the scope of the warrant, the court concluded that, although some of the items seized were outside the

scope of the warrant and of the plain-view exception to the warrant requirement, blanket suppression was not required because the officers who conducted the search "acted reasonably in seizing evidence and, with minor exceptions, carefully adhered to the Warrant," R., Vol. 1 at 68.

The case proceeded to trial, and Mr. Allen requested the court to instruct the jury that, in order to convict him, it had to find that the firearms he possessed "had a substantial effect on interstate or foreign commerce." *Id.* at 79. The court refused to give the instruction. Mr. Allen was convicted, and this appeal followed.

## II. Discussion

### A. Validity of the warrant under *Franks v. Delaware*

Under *Franks*, a court must void a search warrant and suppress "the fruits of the search" if the court "(1) finds that the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant and (2) concludes, after excising such false statements and considering such material omissions, that the corrected affidavit does not support a finding of probable cause." *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008). We review a *Franks* ruling to determine whether the district court committed clear error "regarding the truth or falsity of statements in the affidavit and regarding the intentional or reckless character of

such falsehoods." *Id.* And "[w]hether a corrected affidavit supports a finding of probable cause is a question of law that we review de novo." *Id.*

On appeal, Mr. Allen makes only one *Franks* argument: that the affidavit made a material misrepresentation of the time at which officers observed him with a gun. According to Mr. Allen, the affidavit states that officers observed him with a firearm around 8:00 a.m. on July 22, *see* Aplt. Br. at 15, whereas the officers stated in their later-obtained narrative reports that they observed him with a gun in the early morning hours. Mr. Allen claims this matters because the affidavit mistakenly represented that he possessed the gun within six hours of the issuance of the warrant when in fact twelve hours had elapsed. He posits that, because of the timing error, the issuing judge would have had "to conclude Mr. Allen wielded the firearm around 8:00 a.m. when he allegedly threatened his neighbor." *Id.* at 15-16. But this, too, he says, is "materially different than what actually occurred, viz: Mr. Allen threatened to shoot his neighbor['s] windows around 2:00 a.m., but was not in possession of a firearm; the firearm was seen a short time later by the police as they approached the residence." *Id.* at 16. Further, he claims, he was not armed when he had a physical confrontation with his neighbor, which was around 9:30 a.m.

This argument rests on a faulty premise: that the affidavit reported that officers observed him with a gun at 8:00 a.m. Sergeant Hall made no such statement in his affidavit. As described above, the affidavit clearly stated that

officers arrived at Mr. Allen's house at 2:00 a.m. and observed him on his porch wielding a shotgun. The only events alleged in the affidavit to have occurred at 8:00 a.m. were that "Mr. Allen verbally threatened to shoot his neighbor[']s house windows" and that "Mr. Allen then proceeded to the neighbor's house and physically assaulted him causing injury." R., Vol. 1 at 18. Thus, the affidavit accurately informed the issuing judge that Mr. Allen was in possession of a firearm approximately twelve hours before the judge issued the search warrant, not six hours, as Mr. Allen seems to believe.[1] Accordingly, we see no error in the district court's denial of the suppression motion with regard to *Franks*.

---

[1] We pause to note that Mr. Allen's timing argument differs from the one he advanced in the district court. There, he argued that the issuing judge was misled into thinking Mr. Allen possessed a gun at 8:00 a.m. because the affidavit misreported that he verbally threatened his neighbor at that time, not because it misreported that the officers observed him with a gun at 8:00 a.m. *See* Suppression Hr'g Tr. 5:2-6:8, Nov. 23, 2009, ECF No. 61. The victim's narrative statement put the time of the verbal threat at 2:00 a.m. The district court considered the timing of the verbal threat

> unnecessary to a finding of probable cause. On the record presented, there is no reason to believe that a shotgun wielded at 2:00 or 3:00 a.m. was not still in the house at the time of further threats and a physical assault at 8:00 or 9:00 a.m. The Court further finds no evidence that any misstatement concerning the time of the verbal threat was deliberately or recklessly made by Sgt. Hall or Capt. Watkins.

R., Vol. 1 at 65. We see no error in these findings and conclusions.

**B.    Whether blanket suppression was justified**

Mr. Allen next argues that the district court erred in refusing to suppress all evidence obtained during the search on the ground that the officers flagrantly disregarded the terms of the warrant and grossly exceeded its scope.  On this point, we review the district court's factual findings for clear error and the ultimate determination of Fourth Amendment reasonableness de novo.  *United States v. Foster*, 100 F.3d 846, 849 (10th Cir. 1996).

"[T]he Fourth Amendment mandates that search warrants particularly describe the place to be searched and the persons or things to be seized."  *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988) (brackets and internal quotation marks omitted).  "If evidence is illegally seized, the general rule is that only the improperly seized evidence, not all of the evidence, must be suppressed, unless there was flagrant disregard for the terms of the warrant."  *United States v. Hargus*, 128 F.3d 1358, 1363 (10th Cir. 1997) (internal quotation marks omitted).  But "[w]hen law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant."  *Medlin*, 842 F.2d at 1199.

However, "blanket suppression is an extreme remedy," *United States v. Le*, 173 F.3d 1258, 1270 (10th Cir. 1999), and we have applied it sparingly.  For example, in *Medlin*, we affirmed a blanket suppression order where officers

seized 667 items not identified in the warrant and the seizure was not "mitigated by practical considerations." 842 F.2d at 1199 (internal quotation marks omitted). We agreed with the district court that the search became a "fishing expedition." *Id.* (internal quotation marks omitted). And in *Foster*, we affirmed a district court's blanket suppression order where officers admitted disregarding the terms of the warrant and seizing anything of value. 100 F.3d at 850. We quoted with approval the district court's finding that "there was a wholesale seizure . . . amounting to a fishing expedition for the discovery of incriminating evidence." *Id.* (quotation and emphasis omitted).

With these principles in mind, we now turn to Mr. Allen's argument. He contends that the seizure of items 1-16, 18-26, 29, and 32-34 listed in the Officer's Return exceeded the scope of the warrant because none of those items is related to firearms or ammunition.[2] But he recognizes, without challenging, that the district court found many of the items were contraband and properly seized under the plain view doctrine. Thus, his argument narrows to whether blanket suppression was justified based on the seizure of items 8 (2 small metal screw top canisters), 14 (1 small piece of straightened paper clip), 15 (1 small plastic tray), 16 (2 disposable cameras), 19 (1 copy of Bill of Rights), 20 (8 pieces of paper with hand written 10 codes copied on them), 21 (1 black ledger), 22 (3 spiral

---

[2] This contention overlooks the fact that the warrant also authorized the seizure of items showing dominion and control of the residence. In view of our disposition of Mr. Allen's argument, however, this point is immaterial.

-10-

notebooks containing Officers names, badge numbers, home addresses, home phone numbers), 23 (1 Uniden Bearcat brand scanner), and 25 (1 Uniden "NASCAR" portable scanner with batteries (working order)). *See* Aplt. Br. at 18. Mr. Allen argues that these items were not evidence of criminal activity and constitute nearly thirty percent of the items seized.

We disagree that, by seizing these items, officers flagrantly disregarded the terms of the warrant or grossly exceeded its scope. We underscore at the outset that the issue before us is not whether the officers *properly* seized under the warrant the remaining items at issue. Rather, as the district court aptly put it, "the question is whether 'the unusual remedy of blanket suppression' of seized evidence should be applied," R., Vol. 1 at 67 (quoting *Le*, 173 F.3d at 1269), due to the allegedly extreme nature of the officers' conduct in disregarding or exceeding the constraints of the warrant. The district court correctly answered *that* question in the negative.

The district court found that Sergeant Hall gave reasonable explanations for seizing some of these items. He testified he seized the notebooks with officer information (item 22) for "officer safety issues," *see* Suppression Hr'g Tr. 20:17-22, 26:1-7, Nov. 23, 2009, ECF No. 61; the two scanners (items 23 and 25) and the scanner codes (item 20) as evidence of a probable violation of Oklahoma law prohibiting the use of scanners "during a felony," *id.* at 22:3-7; and the two disposable cameras (item 16) because a photo log found in Mr. Allen's residence

-11-

contained photographs of the car of an Oklahoma State Bureau of Investigation officer, suggesting a threat to "officer safety," *id.* at 24:24 to 25:16. We see no clear error in the district court's finding that these explanations were reasonable and there was no flagrant disregard of the terms of the warrant in seizing them. Sergeant Hall gave no reason for seizing the copy of the Bill of Rights (item 19), and he was not asked about items 8, 14, 15, or 21. But even assuming that there were no reasonable or valid justifications for seizing these few items, they are not so numerous that their seizure constituted flagrant disregard of the limits of the warrant, converted the warrant into a general warrant, or turned the search into a fishing expedition for incriminating evidence, as was the case in *Medlin* and *Foster*. Moreover, the government disclaimed the use of any improperly seized item as evidence at trial, which is an important factor in the analysis. *See Hargus*, 128 F.3d at 1363 ("[A] search is not invalidated merely because some things are seized that are not stated in the warrant. This is particularly true when the non-specified items are not admitted into evidence against the defendant.").

In sum, we see no error in the district court's determination that officers did not flagrantly disregard the terms of the warrant or grossly exceed its scope. Therefore, blanket suppression was not justified.

## C.     Refusal to give jury instruction

Mr. Allen's final challenge concerns the district court's refusal to instruct the jury that, in order to convict him as a felon in possession under 18 U.S.C.

§ 922(g), it had to find that the firearms he possessed "had a substantial effect on interstate or foreign commerce," R., Vol. 1 at 79. We review de novo whether the jury was properly instructed. *United States v. Urbano*, 563 F.3d 1150, 1154 (10th Cir.), *cert. denied*, 130 S. Ct. 434 (2009). Mr. Allen has submitted this argument to preserve further review. As he recognizes, the law in this circuit is "clear that § 922(g)(1) does not require an individual showing of an effect on interstate commerce so long as the firearm has traveled across state lines in the past." *Urbano*, 563 F.3d at 1155. Therefore, we are bound to affirm the district court's refusal to give Mr. Allen's proffered jury instruction. *See United States v. Torres-Duenas*, 461 F.3d 1178, 1183 (10th Cir. 2006) (explaining that "absent en banc review or intervening Supreme Court precedent, we cannot overturn another panel's decision").

## III. Conclusion

The judgment of the district court is AFFIRMED.

Entered for the Court

Jerome A. Holmes
Circuit Judge

-13-